THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MERLE A. BUERKETT, Defendant-Appellee.

Fourth District   No. 4—90—0076

Opinion filed August 9, 1990.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

James Alexander Pappas, of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

After a hearing on defendant's petition to rescind the statutory summary suspension of his driver's license, the trial court granted the petition on the ground that defendant was misled into believing he had a right to have a lawyer present before submitting to a breathalyzer or blood test. On appeal, the State challenges the court's decision as manifestly erroneous. We agree and reverse.

The pertinent facts are as follows. In November 1989, Pleasant

Plains police officer Larry Cave stopped a speeding vehicle. It swerved left and then right, and ran off the road before coming to an abrupt stop. Cave determined that the driver, defendant, Merle Buerkett, smelled strongly of alcohol. Defendant had difficulty retrieving his driver's license from his person for Cave. When asked if he had been drinking, defendant replied that he had "had enough to get home." His speech was slurred. When Cave learned through radio transmission that defendant's driver's license had expired, Cave requested a backup.

Illinois State Trooper Jack Hageman responded and was present when Cave requested defendant to exit the vehicle to perform field-sobriety tests. Defendant refused, stating that he was "not going to do anything until my attorney gets here." Prior to that remark, neither officer had made any mention of any right defendant might have to contact counsel. Cave advised defendant that he did not have the right to communicate with his lawyer before taking the field-sobriety tests. Defendant continued to refuse to get out of the vehicle. Cave then opened the vehicle's doors and observed two cans of beer near the driver's seat.

After further unsuccessful efforts to coax defendant from the vehicle, Cave tried to pull him out by taking hold of defendant's left arm and right shoulder. However, defendant grabbed the steering wheel, and Cave could not force him to let go. Then Hageman ordered defendant out of the vehicle, but defendant continued to refuse. Ultimately, the two officers together were able to forcefully remove defendant from his vehicle. In the process, defendant was placed facedown on the pavement and handcuffed. He sustained scratches to his right cheek and cuts to his lips.

From the time defendant was removed from his van, his behavior varied from abusive, angry, and cursing at one moment, to polite and near tears the next. After defendant was placed in a squad car, he became violent and kicked the floorboard and dash.

Defendant was transported to the Sangamon County building, where he was asked to consent to a breathalyzer test. At the county building, defendant's response continued to be as it was on the highway, namely, he would consent to nothing until he had seen his attorney. Cave and the other police officers present at the county building informed defendant that he did not have the right to have his attorney present or to consult with his attorney before taking the breathalyzer test. They also told him that his insistence on speaking with his attorney before taking the test would be considered to be a refusal by him to take the test. Cave testified that he warned defendant of the consequences of that refusal.

Because of the scratches to the defendant's mouth, Cave was concerned whether the defendant had blood in his mouth which could skew the results of the breath test. He examined defendant's mouth to see if any blood was present, but did not find any. He consulted on this point with Illinois State Trooper Sturgeon, who was also present in the county building. Sturgeon examined defendant's mouth for blood, and agreed with Cave that there was no reason why an accurate blood-alcohol reading could not be obtained from a breathalyzer test.

We specifically note that none of this discussion concerning possible blood in defendant's mouth as an impediment to the breathalyzer test came from defendant himself. His refusal to cooperate with the officers had nothing to do with the presence of any blood in his mouth; instead, he simply continued to refuse to do anything until he first consulted with his attorney. Cave testified that he raised with defendant the subject of a blood test instead of a breath test, but defendant's response remained as before.

Cave testified that when defendant first brought up the subject of his consulting an attorney while they were still on the highway, Cave told defendant that he could speak to an attorney at the county building, not out on the highway. Cave also testified that he later advised defendant that he had a right to counsel before providing evidence of a testimonial or communicative nature, but Cave maintained that he did not tell defendant that his right to counsel extended to a request to submit to breath or blood tests. In fact, the defendant in his own testimony at the hearing specifically denied that Cave *at any time* told him that he had a right to counsel.

Defendant corroborated Cave's and Hageman's testimony that defendant told the officers on the highway that he wanted to have his attorney present before any sobriety tests were administered. He also admitted that he refused to get out of the car, claiming that the officers beat him to get him out.

Defendant claimed that no officer read him any warnings regarding the breathalyzer test or the consequences of his refusal to take the test. Defendant further testified that he told the officers he wished to have his attorney present before the test was administered. Defendant testified that he never refused the test, claiming instead that he said he would take it, but only after his attorney was present. At no time did defendant testify that he had been misled in any way, by any representations made to him, by any of the officers regarding when or where he could have an attorney present.

Despite the absence of any such claim, the trial court found confusion on defendant's part. The court stated it was of the opinion that the

defendant was told that he had the right to have a lawyer present when he did not in fact have that right. Finding that Cave had misstated the defendant's rights, the court concluded as follows:

"I believe that the defendant was misled and he felt that he had a right to have a lawyer present for questioning and that questioning included a breathalyzer or a blood test."

The court then granted the petition for rescission of statutory summary suspension on the ground that defendant did not refuse to take the breathalyzer test. On this record, we find that this decision was clearly and manifestly erroneous.

From the moment defendant was stopped on the highway, the officers were essentially confronted with an abusive drunk. Defendant's fixation on having an attorney present before he consented to do anything, including even getting out of his vehicle, arose solely from his own confused thinking; the officers at the scene did nothing to suggest that defendant had a right to consult with counsel before submitting to any tests. Indeed, they maintained throughout that defendant was repeatedly told that he had no right to consult with an attorney before doing what the officers requested. Defendant not only did not contradict this testimony, he expanded upon it as follows:

"A. [Defendant]: *** [The officers] approached my Bronco and asked me to get out and I asked them why.

Q. [Defense counsel]: Okay, and what was Officer Cave's response to that?

A. Officer Hageman was the one that responded. He wanted to give me a sobriety test and I said that I would like to have my attorney present before any sobriety tests are administered.

Q. Are you talking field sobriety tests?

A. He just said sobriety test. He did not tell me what type.

Q. Alright, and when you said that to him, what was his response to you?

A. *You don't have that right.*

Q. Okay, *did Officer Cave at anytime say to you that night that you had a right to an attorney?*

A. *No.*

Q. What did Officer Hageman then say to you?

A. They said get out of the truck, and I said, once again, I would like to have my attorney present before any sobriety tests are administered." (Emphasis added.)

■■ ■ Section 11—501.1(c) of the Illinois Vehicle Code (Code) provides "that a refusal to submit to [a breathalyzer] test will result in the statutory summary suspension of such person's privilege to operate a

motor vehicle." (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1(c).) Section 2—118.1 of the Code sets forth the procedures through which a person whose license has been suspended pursuant to section 11—501.1 of the Code may have a hearing to determine whether the statutory summary suspension should be rescinded. (Ill. Rev. Stat. 1989, ch. 95½, par. 2—118.1.) Section 2—118.1(b) of the Code requires such a person to "state the grounds upon which the person seeks to have the statutory summary suspension rescinded" when requesting such a hearing. (Ill. Rev. Stat. 1989, ch. 95½, par. 2—118.1(b).) One of the subjects to which the scope of the rescission hearing is statutorily limited is whether the person, "after being advised by the arresting officer that the privilege to operate a motor vehicle would be suspended if the person refused to submit to and complete the test or tests, did refuse to submit." Ill. Rev. Stat. 1989, ch. 95½, par. 2—118.1(b)(3).

In the present case, the trial court concluded that because defendant was somehow misled by the officers regarding his right to counsel, he did not technically refuse to submit to the breathalyzer test. We disagree and find no support in the record for this conclusion.

■ Defendant argues that the trial court should be affirmed and in support cites *People v. Kern* (1989), 182 Ill. App. 3d 414, 538 N.E.2d 184. In *Kern,* the court observed that a defendant ordinarily has no right to consult counsel prior to taking a breathalyzer test, but that the officer in that case, having let the defendant contact an Iowa lawyer before taking the test, could not properly regard as a refusal defendant's pressing his request to speak to an Illinois lawyer, who would be familiar with Illinois law regarding such tests. (*Kern,* 182 Ill. App. 3d at 416, 538 N.E.2d at 186.) Without necessarily indicating our agreement with that conclusion, we merely note that the facts in *Kern* render that case inapplicable. Here, it was defendant who first raised the subject of counsel, and it was he who maintained that same response to all requests the officers made, even after they warned him of the consequences.

■ ■ Defendant's insistence on his nonexistent right to consult with counsel constituted a clear refusal to take the test. At a rescission hearing, which is civil in nature, the driver bears the burden of proof. (*People v. Bates* (1987), 165 Ill. App. 3d 80, 82, 518 N.E.2d 628, 630.) Defendant in this case fell far short of meeting that burden, and the trial court's decision to the contrary was manifestly erroneous.

■ ■ ■ As a separate ground for reversal, the State argues that because defendant's request for a rescission hearing did not set forth the specific ground upon which rescission was ultimately granted, namely, that defendant was confused about his right to counsel before submit-

ting to a breathalyzer test due to misleading information given him by the police officers, that ground was waived and should not have been considered by the trial court. We agree.

In enacting section 2—118.1 of the Code, the legislature intended to severely restrict the focus of rescission hearings. This intention is manifest by the language of that section directing that, "[t]he scope of the hearing *shall be limited* to the issues of ***," and requiring that the party seeking rescission, "shall state [in the request therefor] the grounds upon which the person seeks to have the statutory summary suspension rescinded." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 95½, par. 2—118.1(b).) We thus hold that grounds not so specified in the request for a hearing are waived; further, we hold that it is just as erroneous for a trial court to rescind a statutory summary suspension on a ground not specified in the request for hearing as it would be for the court to order a rescission for a reason not specified in paragraph (b) of section 2—118.1 of the Code. Ill. Rev. Stat. 1989, ch. 95½, par. 2—118.1(b).

The legislature had good reason for limiting the focus of rescission hearings. They are typically part of the traffic dockets in the circuit courts statewide, and these dockets are usually the busiest and the most understaffed. In order to expedite rescission hearings, both the court and the prosecutor must know in advance the defendant's asserted ground for rescission. To hold otherwise would turn rescission hearings into discovery depositions, permitting defendants, as in this case, to make "blunderbuss arguments" at the conclusion of the hearing, hoping that the court might find some grounds for rescission as it sorts through the testimony it has heard.

An additional difficulty with this approach, again as shown by the record in this case, is that neither the trial court nor the prosecutor can tell as the hearing progresses what evidence or line of inquiry is relevant to the issues before the court.

Consistent with these views, we conclude that the trial courts should enforce compliance with the requirements of section 2—118.1(b) of the Code by insisting that an attorney specify in a request for a rescission hearing *only* those grounds which the attorney *in good faith* believes to be present.

For the reasons stated above, the order rescinding the statutory summary suspension is reversed.

Reversed.

GREEN and McCULLOUGH, JJ., concur.