STATE of Wisconsin, Plaintiff-Respondent,

v.

Dennis J. REITTER, Defendant-Appellant.

Supreme Court

*No. 98–0915. Oral argument May 6, 1999.—Decided June 29, 1999.*

(Also reported in 595 N.W.2d 646.)

For the defendant-appellant there were briefs by *Michael C. Witt* and *Monogue & Witt, S.C.*, Jefferson and oral argument by *Michael C. Witt*.

For the plaintiff-respondent the cause was argued by *Susan M. Crawford*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. DAVID T. PROSSER, J. This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (1995–96).[1] The issue is whether a police officer is required to advise a custodial defendant, charged with operating a motor vehicle while intoxicated, that the right to counsel does not apply to the administration of a chemical test under Wisconsin's implied consent statute, Wis. Stat. § 343.305. A related question, whether the due process clause of the Wisconsin Constitution imposes an affirmative duty upon police officers to advise defendants that the right to counsel does not attach to the implied consent statute, was not certified to this court but was raised by the defendant in his brief to the court of appeals.

¶ 2. The Racine County Circuit Court, Richard J. Kreul, Judge, ruled that because the right to counsel does not apply to the implied consent setting, the defendant, Dennis J. Reitter, unlawfully refused to submit to a chemical test. Reitter appealed the judgment, maintaining that the arresting deputy was obligated to advise him that no right to counsel exists under the implied consent statute, and arguing that requests for counsel should not be construed as a refusal to submit to a chemical test. The court of appeals certified the appeal to this court, concluding that the question raised statutory and constitutional issues meriting our review. Because this issue is one of first impression and because it impacts a subject vital to the public interest, we granted review.

¶ 3. Inasmuch as the implied consent law is a statutory creation, it is the legislature, not this court, which should impose duties upon officers in the implied

---

[1] All references to the Wisconsin Statutes are to the 1995–96 statutes unless otherwise indicated.

consent setting; and until the legislature modifies the implied consent statute, officers are under no affirmative duty to advise custodial defendants about rights for which the statute makes no provision. We observe that where a defendant expresses no confusion about his or her understanding of the statute, a defendant constructively refuses to take a breathalyzer test when he or she repeatedly requests to speak with an attorney in lieu of submitting to the test. We also hold that because the implied consent law creates statutory privileges, not constitutional rights, no due process violation occurs when an officer does not inform a defendant that the right to counsel does not attach to the stages preceding administration of a chemical test. The State should not be bound by a defendant's mistaken assumptions about his or her constitutional rights. In this case, the arresting deputy advised the defendant five times about the consequences of failing to take the breathalyzer test, and the deputy warned the defendant that continued insistence to speak with an attorney would be deemed a refusal. Accordingly, we affirm the circuit court.

## FACTS

¶ 4. For purposes of this review the facts are not in dispute. On Wednesday afternoon, December 18, 1996, Racine County Deputy Sheriff Melvin Sipher (Deputy Sipher) arrested Dennis J. Reitter (Reitter) for operating a motor vehicle while intoxicated (OWI). Deputy Sipher handcuffed Reitter, advised him that he was under arrest, and transported Reitter to the sheriff's department patrol station for administration of an intoxilyzer test. Reitter explained he was "going through a divorce" and asked Deputy Sipher "to give him a break and take him home." Reitter expressed

concern that he would not be able to meet his son when the boy got off the bus at 4:00 p.m. The record does not indicate whether Deputy Sipher read *Miranda* rights to Reitter.

¶ 5. After issuing a citation, Deputy Sipher administered the "Informing the Accused" Form. The "Informing the Accused" Form, issued by the Department of Transportation, reads:

> When a Law Enforcement Officer requests that you submit to a chemical test, pursuant to Wisconsin's Implied Consent Law, the officer is required to inform you of the following:
>
> Section A
> (applies to everyone)
>
> 1. You are deemed under Wisconsin's Implied Consent Law to have consented to chemical testing of your breath, blood or urine at this Law Enforcement Agency's expense. The purpose of testing is to determine the presence or quantity of alcohol or other drugs in your blood or breath.
>
> 2. If you refuse to submit to any such tests, your operating privilege will be revoked.
>
> 3. After submitting to chemical testing, you may request the alternative test that this law enforcement agency is prepared to administer at its expense or you may request a reasonable opportunity to have any qualified person of your choice administer a chemical test at your expense.
>
> 4. If you take one or more chemical tests and the result of any test indicates you have a prohibited alcohol concentration, your operating privileges will be administratively suspended in addition to other penalties which may be imposed.

5. If you have a prohibited alcohol concentration or you refuse to submit to chemical testing and you have two or more prior suspensions, revocations or convictions within a 10 year period and after January 1, 1988, which would be counted under s.343.307(1) Wis. Stats., a motor vehicle owned by you may be equipped with an ignition interlock device, immobilized, or seized and forfeited.[2]

As Deputy Sipher read the form, he paused periodically to verify that Reitter was listening, and he initialed the individual paragraphs of the form as he completed reciting them.

¶ 6. Reitter reacted to the reading of the "Informing the Accused" Form by stating repeatedly that he wished to call his attorney. Deputy Sipher did not respond directly to Reitter's request but instead explained that under the implied consent law, Reitter had agreed to submit to the test, and that a refusal to take the test would result in the revocation of driving privileges. In five exchanges, Reitter repeatedly insisted upon the right to counsel, and Deputy Sipher repeatedly warned him about the nature of the implied consent law and the consequences of refusal. In his written report, Deputy Sipher observed:

> I explained to Reitter 5 times that I needed a yes or no answer to my question, will you submit to a test of your breath and Reitter responded, "I want to call

---

[2] Section B of the "Informing the Accused" Form, which applies to commercial motor vehicle operators, is omitted here. Deputy Sipher testified to the circuit court that he read the entire form to Reitter. Under *State v. Piskula*, 168 Wis. 2d 135, 140–41, 483 N.W.2d 250 (Ct. App. 1992), failure to read the commercial warning to the holder of a regular driver's license does not invalidate the administration of the "Informing the Accusing" Form.

my attorney." I made it very clear to Reitter that his answer could result in a refusal and his driving priviledge (sic) would be revoked. Regardless of how I repeatedly explained this to Reitter, he would not answer my questions.

Deputy Sipher also testified:

I repeated again that he's deemed by the Wisconsin Implied Consent law to submit to a test that we're prepared to offer. I repeated this five times and continued to get the same response that he wanted to talk to his attorney. I also made it clear to him if he did refuse to take the test that he could have his driving privilege revoked.

The record does not suggest Reitter was confused by Deputy Sipher's reading of the "Informing the Accused" Form.

¶ 7. During these exchanges, Sheriff's Deputy Roscizewski began to prepare the intoxilyzer test. Like Deputy Sipher, Deputy Roscizewski also urged Reitter to submit to the test and warned him that a refusal would result in license revocation. In his written report, Deputy Roscizewski noted "Reitter stated 'I'm not refusing, I just want to talk to my attorney.'" Although the record does not indicate whether Reitter communicated a verbal refusal to submit to the test, he became very uncooperative. He would not answer Deputy Sipher's questions. He grew belligerent. Reitter questioned Sipher's right to stop him and asked to see the printed OWI law. He stated that his rights were violated.

¶ 8. Deputy Sipher determined "that regardless of what I asked him and what I said to him he was not going to take the test." After informing Reitter that the repeated requests would be noted as a refusal, Deputy

Sipher completed a Notice of Intent to Revoke Operating Privileges and issued a Notice of Intent to Suspend Reitter's driver's license. Reitter was transported to the Racine County Jail, where he was given the opportunity to consult with an attorney.

## PROCEDURAL HISTORY

¶ 9. Reitter filed a request for a refusal hearing on December 30, 1996. Evidentiary hearings followed in July and August, 1997. On March 23, 1998, the circuit court issued a written decision, finding that the right to counsel does not apply to the implied consent setting. The circuit court also ruled that Deputy Sipher complied with the requirements of the implied consent statute, and it concluded that Reitter's repeated insistence on calling his attorney constituted an unlawful refusal. Reitter appealed, and the court of appeals certified the issue to this court.

¶ 10. In its analysis for certification, the court of appeals echoed the circuit court by expressing concern about a perceived tension between Wis. Stat. § 946.75, the statute creating a general right to counsel, and case law holding that under the implied consent statute, no right to counsel exists. Noting that no Wisconsin case law addresses an officer's duty to advise a custodial defendant that the right to counsel does not apply to the implied consent setting, and finding other jurisdictions divided, the court of appeals asked this court to clarify the issue.

## STANDARD OF REVIEW

¶ 11. The issue in this case, whether the implied consent statute obligates police officers to advise custodial defendants that the right to counsel does not apply

to the pre-test setting, raises two questions of law. First, this case requires us to interpret Wis. Stat. § 343.305. Application of the implied consent statute to an undisputed set of facts, like any statutory construction, is a question of law that this court reviews *de novo*. *State v. Zielke*, 137 Wis. 2d 39, 44–45, 403 N.W.2d 427 (1987); *State v. Rydeski*, 214 Wis. 2d 101, 106, 571 N.W.2d 417 (Ct. App. 1997). Second, this case asks us to reconcile the due process clause of the Wisconsin Constitution, article I, section 8(1), with the implied consent law, Wis. Stat. § 343.305. Questions stemming from the application of constitutional principles are subject to our independent review. *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 616, 630, 579 N.W.2d 698 (1998). In its independent review of questions of law, this court benefits from the analyses of both the circuit court and the court of appeals. *State v. Hansford*, 219 Wis. 2d 226, 234, 580 N.W.2d 171 (1998). Where the court of appeals does not decide an issue, we use the "limited analysis" the court of appeals provides in its certification to this court. *Id.* at 234 n.9.

## IMPLIED CONSENT STATUTE

¶ 12. We begin our analysis by considering whether the implied consent statute imposes an affirmative duty upon a police officer to inform a defendant that there is no right to counsel in the implied consent setting, and whether a defendant's request to consult with an attorney constitutes a statutory refusal to submit to a chemical test.

¶ 13. The Wisconsin Legislature enacted the implied consent statute to combat drunk driving.[3]

---

[3] The problem of drunk driving is not new. In 1957, the United States Supreme Court compared "[t]he increasing

*Zielke*, 137 Wis. 2d at 46 (citing *State v. Brooks*, 113 Wis. 2d 347, 355–56, 335 N.W.2d 354 (1983)). Designed to facilitate the collection of evidence, the law was not created to enhance the rights of alleged drunk drivers.[4] *Id.*; *State v. Neitzel*, 95 Wis. 2d 191, 203–04, 289 N.W.2d 828 (1980) (citing *Scales v. State*, 64 Wis. 2d 485, 219 N.W.2d 286 (1974)). Rather, the implied consent statute was "designed to secure convictions."[5] *State v. Crandall*, 133 Wis. 2d 251, 258, 394 N.W.2d 905 (1986) (citing *Brooks*, 113 Wis. 2d at 356). Given the legislature's intentions in passing the statute,

---

slaughter on our highways" to a battlefield. *Breithaupt v. Abram*, 352 U.S. 432, 439 (1957). Nearly one generation later, the Court underscored the persistence of the menace. *South Dakota v. Neville*, 459 U.S. 553, 558–59 (1983) (collecting cases). Wisconsin first enacted its implied consent law in 1970. Drunk driving continues to plague Wisconsin roadways. In 1996, the year of Reitter's arrest, alcohol was a related factor in 38.9% of motor vehicle fatalities. *1997 Wisconsin Alcohol Traffic Facts Book*, published by the Bureau of Transportation Safety, Department of Transportation, at 30. The following year, an alcohol-related crash resulting in death or injury occurred every 74 minutes. *Id.* at i.

[4] In *State v. Neizel*, this court reasoned:

> The proper and liberal construction of legislation designed for this very purpose militates against the court's granting the accused a limited right to counsel, because that right, to some degree at least, would impede the police in obtaining evidence against those drivers who are under the influence of intoxicants.

*State v. Neitzel*, 95 Wis. 2d 191, 204, 289 N.W.2d 828 (1980).

[5] In this respect, the implied consent statute is not unlike strict liability statutes "designed to control conduct of many people" and "to assure the quick and efficient prosecution of large numbers of violators." *State v. Dundon*, 226 Wis. 2d 654, 664–65, 594 N.W.2d 780 (1999) (quoting *State v. Brown*, 107 Wis. 2d 44, 54, 318 N.W.2d 370 (1982)).

courts construe the implied consent law liberally. *Zielke*, 137 Wis. 2d at 47.

¶ 14. The implied consent law provides that Wisconsin drivers are deemed to have given implied consent to chemical testing as a condition of receiving the operating privilege. Wis. Stat. § 343.305(2); *Neitzel*, 95 Wis. 2d at 193; *Rydeski*, 214 Wis. 2d at 109. Consequently, drivers accused of operating a vehicle while intoxicated have no "right" to refuse a chemical test. *Crandall*, 133 Wis. 2d at 257.

¶ 15. The legislature determines what arresting officers must tell defendants prior to the administration of a chemical test. *Id.* at 259–60. Section 343.305(4) requires officers to advise the accused about the nature of the driver's implied consent, and the "Informing the Accused" Form meets the statutory mandate of alerting defendants to the law and their rights under it. *Village of Oregon v. Bryant*, 188 Wis. 2d 680, 683–84, 524 N.W.2d 635 (1994). The law requires no more than what the implied consent statute sets forth. *Crandall*, 133 Wis. 2d at 260.

¶ 16. Officers who administer a test under the implied consent statute are not required to advise defendants about *Miranda*[6] rights. *State v. Bunders*, 68 Wis. 2d 129, 133, 227 N.W.2d 727 (1975) (*Miranda* rules do not apply because request to submit to a chemical test does not implicate testimonial utterances). In addition, Wisconsin's implied consent statute makes no provision for a right to counsel. *Neitzel*, 95 Wis. 2d at 200.

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶ 17. Reitter contends that the Sixth Amendment right to counsel, reflected in Wis. Stat. § 946.75,[7] conflicts with the *Neitzel* principle. Although Reitter does not challenge *Neitzel* in this appeal, he proposes that we recognize a broader rule obligating officers to advise defendants that the right to counsel does not pertain to the implied consent setting.

¶ 18. In *Neitzel*, we first reconciled any perceived tension between Wis. Stat. § 946.75 and the implied consent law by observing that the statutory obligations imposed upon drivers by the implied consent law are unrelated to the general, separate right to counsel. *Neitzel*, 95 Wis. 2d at 200. The legislature enacted the implied consent law after passing the general right to counsel statute, and the implied consent law made no provision for the right to consult with an attorney prior to administration of a chemical test. *Id.* The acknowledged rules of statutory construction lead to the conclusion that the legislature did not intend to extend the right to counsel when it subsequently enacted the more recent, narrower, implied consent statute. *Id.*

¶ 19. Reitter relies on a South Dakota federal district court case and a Pennsylvania Supreme Court case to urge expansion of the rule by requiring officers to alert defendants that the right to counsel does not exist. In *Heles v. State of South Dakota*, 530 F. Supp. 646 (D.S.D. 1982), the court found the right to counsel attaches prior to the administration of a chemical test. *See id.* at 654. In *Department of Transp. v. O'Connell*,

---

[7] Wisconsin Stat. § 946.75 provides:

Whoever, while holding another person in custody and if that person requests a named attorney, denies that other person the right to consult and be advised by an attorney at law at personal expense, whether or not such person is charged with a crime, is guilty of a Class A misdemeanor.

555 A.2d 873 (1989), the Pennsylvania Supreme Court held that police officers have a duty to issue a warning (an "*O'Connell* warning") that *Miranda* rights do not apply to the implied consent setting.

¶ 20. Reitter's reliance on *Heles* is misplaced.[8] The Eighth Circuit vacated the case as moot upon the death of the appellant, 682 F.2d 201 (8th Cir. 1982); therefore, the decision "is not precedent even in the federal court in which it was decided." *Department of Pub. Safety v. Gates*, 350 N.W.2d 59, 61 (S.D. 1984).[9] The South Dakota Supreme Court later declined to follow the *Heles* rationale and instead held that the right to counsel does not apply prior to the administration of a blood-alcohol test. *Id.*

¶ 21. Even if we were to apply the reasoning of *Heles*, the facts of that case, like those of *O'Connell*, pivot on one key distinction. In *Heles* and *O'Connell*, both courts addressed the possibility that the reading of *Miranda* warnings had "confused" the defendants about general rights to counsel and the absence of that right under implied consent laws. *Heles*, 530 F. Supp. at 649; *O'Connell*, 555 A.2d at 874. Fears that confused defendants might be misled "into making uninformed and unknowing decisions to take the test" prompted creation of the "*O'Connell* warning." *O'Connell*, 555 A.2d at 878.[10]

---

[8] Defendant suggests "[f]ederal case law provides the perfect study of this issue." Defendant's Reply Brief at 8.

[9] Other courts reached similar conclusions when defendants advanced *Heles* arguments. *See Langelier v. Coleman*, 861 F.2d 1508, 1510–11 (11th Cir. 1988) (per curiam); *People v. Okun*, 495 N.E.2d 115, 117–18 (Ill. App. Ct. 1986).

[10] Pennsylvania's experience in the years following *O'Connell* makes us reluctant to open a similar Pandora's box in Wisconsin. A few years ago, the Pennsylvania Supreme Court

¶ 22. A minority of other jurisdictions apply the "confusion doctrine" to situations in which a defendant might be misled by the interplay between *Miranda* rights and the lack of right to counsel under implied consent laws. *See Gentry v. State*, 938 P.2d 693, 696–97 (Mont. 1997) (collecting cases). Under the "confusion doctrine," a defendant's refusal to submit to a chemical test will be excused if the defendant believed he or she had the right to invoke counsel before taking the test. *Williams v. State*, 973 P.2d 218, 221 (Mont. 1999). A defendant's access to the "confusion doctrine," however, is premised on a reading of *Miranda* rights and a showing that the defendant actually was "confused." *Gentry*, 938 P.2d at 696–97; *McDonnell v. Department of Motor Vehicles*, 119 Cal. Rptr. 804, 807–08 (Cal. App. 1975); *Haas v. State Dep't of Licensing*, 641 P.2d 717

expanded the requirement of the "*O'Connell* warning" to cases in which defendants had not been read the *Miranda* warning. *See Commonwealth, Dep't of Transp. v. Scott*, 684 A.2d 539, 546 (Pa. 1996); *Commonwealth, Dep't of Transp. v. McCann*, 626 A.2d 92, 93–94 (Pa. 1993). The *O'Connell* line of cases, however, continues to draw criticism for the new confusion it created between police and defendants, and it has prompted calls for the Pennsylvania legislature to revise that state's implied consent statute. *See Commonwealth, Dep't of Transp. v. Boucher*, 691 A.2d 450, 453 (Pa. 1997) (conceding that "[t]he *O'Connell* decision has engendered much confusion over its application under varying factual circumstances"); *Scott*, 684 A.2d 539, 544 (acknowledging ongoing confusion since *O'Connell* and observing how the Pennsylvania Supreme Court has "catalogued in great detail our litany of rulings on this issue"); *Commonwealth v. Ingram*, 648 A.2d 285, (Pa. 1994) (Papadakos, J., dissenting); Louis W. Schack, *Criminal Procedure—Motorist Confusion: The Unfortunate By-Product of Pennsylvania's Implied Consent Law—Commonwealth v. Ingram, 648 A.2d 285 (Pa. 1994)*, 68 Temp. L. Rev. 931 (1995).

(Wash. Ct. App. 1982); *Ehrlich v. Backes*, 477 N.W.2d 211, 214 (N.D. 1991).

¶ 23. Wisconsin has not adopted the "confusion doctrine." In part, its application is unnecessary because *Miranda* warnings are not required in the implied consent setting. *Bunders*, 68 Wis. 2d at 133–34. In addition, the provisions of the statute are neither confusing nor contradictory. *Bryant*, 188 Wis. 2d at 693–94. Thus, our courts do not recognize "subjective confusion" as a defense. *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 280, 542 N.W.2d 196 (Ct. App. 1995).[11] Even when a defendant claims confusion about the provisions of the "Informing the Accused" Form, repeated readings of its "clear and unequivocal language" trump a confusion defense. *Neitzel*, 95 Wis. 2d at 206.

¶ 24. In this case, Reitter does not rely on a confusion theory. Reitter advances neither of the two premises other states require for the defense: reading of *Miranda* rights and a showing of actual confusion.[12] Even if we were to extend the "confusion doctrine" to

---

[11] "[T]he legislature has adequately addressed any risk of confusion by imposing a statutory duty on the police to provide accused drivers with specific information." *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 281, 542 N.W.2d 196 (Ct. App. 1995).

[12] Although the record is silent about whether Deputy Sipher read Reitter *Miranda* rights, Reitter fails to argue that recitation of a *Miranda* warning spawned any confusion about the implied consent law. Reitter does not cite the *Miranda* case in either his brief to the court of appeals or his reply brief to this court.

Wisconsin, this is not the case in which to do so.[13] Had Reitter claimed his insistence for a lawyer fell under the shadow of a *Miranda* warning, he might have made an argument for obligating the State to clarify any resulting right to counsel confusion. Instead, Reitter offers little that would tempt us toward embarking down the tangled *O'Connell* path.

¶ 25. This court has been reluctant "to devise a '*Miranda*-like' card" under the implied consent statute. *Bryant*, 188 Wis. 2d at 692. The legislature decides what must be told to persons before the administration of a chemical test, *Crandall*, 133 Wis. 2d at 259, and it is for the legislature, not this court, to add to the statutory scheme.

¶ 26. Although in *Bryant* we observed that the "Informing the Accused" Form could benefit from simplification, this court chose not to graft judicial language onto the statutory procedures. *Bryant*, 188 Wis. 2d at 692–93. Noting that police officers in the implied consent setting read instructions to defendants who may be intoxicated, we urged the Department of Transportation to adopt language that was plain and "as simple and straightforward as possible." *Id.* at 693. We declined, however, to take the further step of telling the Department precisely how it should modify those forms. *Id.*

¶ 27. We conclude that an officer's only duty under these circumstances is to administer the information contained in the "Informing the Accused" Form. *Quelle*, 198 Wis. 2d at 284. The simplified procedure envisioned in *Bryant* would be contradicted by obligating officers to inform defendants about rights they do

---

[13] Here it is not clear whether Reitter was given *Miranda* warnings. We do not decide whether this case would have come out differently had Reitter been given those warnings.

not have. Requiring officers to address nonexistent rights undercuts the "simple and straightforward" approach and risks confusing a potentially intoxicated defendant. If police move beyond the consistent statutory procedures and attempt to explain the law's parameters, defendants will ignite the confusion defense. *See id.* at 273. Explanations that exceed the statute's language would cause an "oversupply of information" and encourage "misled" defendants to challenge an officer's compliance with statutory requirements. *See id.* at 280. This result would frustrate the legislature's intention to facilitate drunk driving convictions by offering defendants an avenue for litigating which presumed rights merit inclusion in an officer's explanation. *Bryant*, 188 Wis. 2d at 692 (admonishing frequent litigation of implied consent issues).

¶ 28. We therefore hold that where a defendant exhibits no confusion, the officer is under no affirmative duty to advise the defendant that the right to counsel does not attach to the implied consent statute.

¶ 29. Although we decline to impose duties beyond those created by the legislature, we prefer that every officer respond to defendants in a manner that is both direct and polite. Good practice should lead professional, courteous officers to advise insistent defendants that the right to counsel does not apply to chemical tests. Where a driver repeatedly asks to speak with an attorney, it would be courteous and simple for the officer to correct the accused's mistaken assumptions. Certainly officers must be cautious about engaging in explanations that exceed the statutory requirements and risk providing the defendant with an "oversupply of information." Nonetheless, we see no harm in allowing the officer to state briefly that the

231

right to counsel does not attach to the implied consent setting.[14] That said, we do see harm in transforming a common courtesy into an affirmative duty judicially superimposed on a legislative scheme.

¶ 30. We turn to the first of Reitter's two more specific arguments. Reitter contends that the circuit court erroneously revoked his driving privileges because Deputy Sipher failed to comply with the warning requirements of the implied consent statute.

■

¶ 31. If an arresting officer fails to comply substantially with the statute, an order of revocation will be reversed. *State v. Sutton*, 177 Wis. 2d 709, 713, 503 N.W.2d 326 (Ct. App. 1993) (citing *State v. Wilke*, 152 Wis. 2d 243, 249–50, 448 N.W.2d 13 (Ct. App. 1989)). Section 343.305(9)(a)5.b. of the Wisconsin Statutes requires arresting officers to inform defendants orally about subsection (4) or both subsections (4) and (4m).[15] The "Informing the Accused" Form conveys the duties of subsection (4) and complies with the statutory mandate. *Bryant*, 188 Wis. 2d at 684.

---

[14] We recognize officers might hesitate to state even this simple advisement, given the danger that a defendant may launch an "oversupply of information" attack on an officer's statutory compliance. There are, however, other alternatives for achieving the same result, such as posting a sign on the wall above the chemical testing equipment, or suggesting that the Department of Transportation modify the "Informing the Accused" Form to alert drivers that the right to counsel does not pertain to the chemical test setting.

[15] Subsection (4m) was repealed by 1997 Wis. Act 107 § 2. The repealed subsection (4m) addresses the requirements of an officer when the accused driver holds a commercial license or operates a commercial vehicle.

¶ 32. To contest the sufficiency of the statutory warning, a defendant must satisfy a three-pronged test, showing that: (1) the arresting officer either failed to meet "or exceeded" his or her duty to inform the accused driver under subsections (4) and (4m); (2) the "lack or oversupply of information" misled the accused driver; and (3) the arresting officer's failure to inform the driver affected the driver's ability to make a choice about submitting to the chemical test. *Quelle*, 198 Wis. 2d at 280.

¶ 33. In this case, Deputy Sipher complied substantially with the first prong when he read the "Informing the Accused" Form to Reitter five times. Reitter contends Deputy Sipher violated the statutory guidelines because he made minor omissions in completing the "Informing the Accused" Form.[16] The statute, however, only requires arresting officers to inform defendants *orally* about the law; it does not mandate written completion of the form, and it does not obligate officers to fill out the form in any particular manner. Where officers fulfill the essential statutory requirements, substantial compliance is not fatal to an officer's execution of the implied consent statute. *Wilke*, 152 Wis. 2d at 250.

¶ 34. Reitter also fails to show that Deputy Sipher did not comply substantially with the second and third prongs of the test. Under the second prong, Deputy Sipher created neither a lack nor an oversupply of information that might mislead Reitter: on the con-

---

[16] Reitter suggests the deputy failed to record the precise time the form was read to him, and he argues that Deputy Sipher neglected to check the box confirming that Section B, the portion of the form addressing commercial operators, had been read to him.

trary, Deputy Sipher rigidly followed the script of the "Informing the Accused" Form.[17] Thus, under the third prong, Deputy Sipher's level of compliance did not compromise Reitter's decision about whether to submit to the test.

¶ 35. Because we find Deputy Sipher complied substantially with the implied consent statute, we conclude that the circuit court's revocation of Reitter's driving privileges was not in error.

¶ 36. We now address Reitter's second specific argument, namely that his repeated requests for an attorney did not constitute an unlawful refusal. When a Wisconsin driver gives implied consent to chemical testing, the driver has no right to refuse a test. *Zielke*, 137 Wis. 2d at 48 (citing *Crandall*, 133 Wis. 2d at 255–57). Thus, "any failure to submit to such a test" constitutes refusal and triggers the statutory penalties. *Rydeski*, 214 Wis. 2d at 106. The statute only excuses failures resulting from physical disability or disease unrelated to the use of alcohol or controlled substances. Wis. Stat. § 343.305(9)(a)5.c.; *Rydeski*, 214 Wis. 2d at 106 (citing *Village of Elkhart Lake v. Borzyskowski*, 123 Wis. 2d 185, 191, 366 N.W.2d 506 (Ct. App. 1985)).

¶ 37. The implied consent law does not require a verbal refusal. *Rydeski*, 214 Wis. 2d at 106. Rather, the conduct of the defendant may constitute an unlawful refusal. *Id.* Conduct that is "uncooperative" or that prevents an officer from obtaining a breath sample results in refusal. *Id.* "[I]t is the reality of the situation that must govern, and a refusal in fact, regardless of the

---

[17] Reitter implicitly concedes this by noting twice that Deputy Sipher "parroted" the form. Defendant's brief at 10 and 15.

words that accompany it, can be as convincing as an express verbal refusal." *Borzyskowski*, 123 Wis. 2d at 192 (quoting *Beck v. Cox*, 597 P.2d 1335, 1338 (Utah, 1979)). Thus, where a defendant's only conduct is an insistence on using the restroom, and the officer repeats the request to administer the test "at least five times," the failure to submit constitutes a refusal. *Rydeski*, 214 Wis. 2d at 107.

¶ 38. A defendant who conditions submission to a chemical test upon the ability to confer with an attorney "refuses" to take the test. *Neitzel*, 95 Wis. 2d at 205.[18] In *Neitzel*, the arresting officer gave the defendant the opportunity to call an attorney prior to the

---

[18] "Once there has been a proper explanation and there has been a refusal, even though that refusal is conditioned on the accused's willingness to reconsider after conferring with counsel, a refusal has occurred under the statute and the accused is subject to the consequence of a mandatory suspension." *Neizel*, 95 Wis. 2d at 205. Courts in other jurisdictions have addressed this same question. *See State v. Widmaier*, 724 A.2d 241 (N.J. 1999) (defendant refused to take breath test when he agreed to submit to test but requested attorney be present for calibration purposes); *Sheppard v. Mississippi State Highway Patrol*, 693 So. 2d 1326 (Miss. 1997) (driver's confusion about *Miranda* rights applied to chemical testing procedure but did not preclude finding that driver refused to submit to the test); *Dobbins v. Ohio Bureau of Motor Vehicles*, 664 N.E.2d 908 (Ohio 1996) (where police violate defendant's statutory right to counsel and defendant conditions submission to chemical test upon consultation with an attorney, driver nonetheless refuses to take the test); *Ehrlich v. Backes*, 477 N.W.2d 211 (N.D. 1991) (confusion about *Miranda* rights does not vitiate refusal to submit to chemical test when defendant demands the presence of an attorney); *State v. Hoch*, 500 So. 2d 597 (Fla. Dist. Ct. App. 1986) (following *Neitzel* and holding that no right to refuse exists under implied consent statutes).

administration of the chemical test. *Id.* at 195. Subsequently, the officer warned the defendant "several more times" that "insistence on waiting for his lawyer would be construed as a refusal to take the test." *Id.* at 196.[19] This advisement, combined with the officer's

Even Pennsylvania courts, which created the "*O'Connell* warning," find that when police officers provide "an accurate statement about [ ] rights," the defendant's "continued demands to speak to a lawyer constitute a refusal." *Commonwealth v. Mercer,* 699 A.2d 1363, 1366 (Pa. Commw. Ct. 1997); (citing *Commonwealth, Dep't of Transp. v. Scott,* 684 A.2d 539 (1996)). By contrast, in Vermont failure to submit to a test does not constitute refusal if the defendant is not able to consult an attorney. Unlike Wisconsin, however, Vermont's statute gives persons the right to counsel before deciding whether to take the test. *See State v. Berini,* 701 A.2d 1055 (Vt. 1997). Similarly, Missouri's statute grants OWI defendants 20 minutes in which to contact an attorney, and failure to submit to the chemical test therefore does not constitute refusal. *See Lorton v. Director of Revenue,* 985 S.W.2d 437 (Mo. 1999).

[19] Recently, the Illinois Appellate Court modified the circumstances in which requests for an attorney will constitute a refusal. In *People v. Shelton,* the court held that when an officer fails to inform a defendant that requests for counsel will be construed as a refusal, and when the officer does not explain the penalties of refusal, there can be no refusal without some other "behavioral or verbal indication." *People v. Shelton,* 708 N.E.2d 815 (Ill. App. 1999) (citing *People v. Kern,* 538 N.E.2d 184 (Ill. 1989)). Unlike Reitter, the *Shelton* defendant was not told that his request for counsel would constitute a refusal. Moreover, the officer in *Shelton* failed to follow the Illinois statutory guidelines, which required him to warn the driver that a refusal would result in a statutory suspension of driving privileges. *Id.*

Although the *Shelton* court observed, as we do, that the issue of refusal might have been avoided had the officer simply told the accused driver that he had no right to speak with an attorney, *id.,* the court did not propose creation of a new duty to

repeated explanations in the clear language of the "Informing the Accused" Form, led this court to find that the *Neitzel* defendant had refused the test. *Id.* at 206.

¶ 39. In this case, Reitter contends he never "articulated a refusal";[20] on the contrary, he told Deputy Roscizewski "I'm not refusing." But Reitter's actions ring louder than his articulated words, and regardless of his words, he refused in fact. Like the *Rydeski* defendant, Reitter engaged in at least five exchanges with the deputies and prevented the officers from administering the test. Like the *Neitzel* defendant, Reitter listened to repeated readings of the "Informing the Accused" Form and was warned that his conduct could result in a refusal. Nonetheless, Reitter refused to answer Deputy Sipher's repeated question. Reitter was uncooperative and belligerent. Both Deputy Sipher and Deputy Roscizewski correctly concluded that Reitter had no plans to take the test until he had an opportunity to speak with his attorney.

¶ 40. We thus find that Reitter's conduct constituted a constructive refusal to submit to the breathalyzer test.

## DUE PROCESS

¶ 41. Having concluded that the implied consent statute does not impose an affirmative duty upon police

---

advise defendants about the lack of right to counsel. Significantly, *Shelton* reiterated the rule of *People v. Buerkett*, 559 N.E.2d 271 (Ill. App. Ct. 1990), which holds that insistence on right to counsel before testing constitutes refusal when the defendant has been warned about the "consequences of that insistence." *Shelton*, 708 N.E.2d 815.

[20] Defendant's brief at 6.

officers to advise defendants that the right to counsel does not apply to the administration of a chemical test, we now turn to the second question of law: whether constitutional protections impose a duty upon police officers to advise a defendant that the right to counsel does not apply to the stage preceding administration of a chemical test.

¶ 42. Reitter argues that the State of Wisconsin (State) violated his due process rights when Deputy Sipher neglected to warn him that the right to counsel does not pertain to implied consent procedures. Reitter further suggests that because the deputy "actively misled" him to believe he had the right to consult an attorney, and because he relied on that presumed right, Reitter failed to submit to the breathalyzer test.

¶ 43. The State contends that Reitter waived this issue because he raises it for the first time on appeal. Although it is this court's usual practice to refuse issues not raised in the circuit court, the rule is "not absolute." *Apex Electronics Corp. v. Gee*, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998) (citing *Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980)). This court retains the discretion to address an issue raised for the first time on appeal when the issue is a question of law that has been briefed by both parties, and when the issue merits resolution on public policy grounds. *See id.* In this case, both parties briefed the issue. In addition, both the circuit court and the court of appeals predicted that the question of the right to counsel in the implied consent setting will recur in future cases as the public gains increased awareness of its rights.[21] After all, most people in custody assume it is a reasonable

---

[21] We acknowledge that in reality most people have been "Mirandized by television" and thus reach conclusions some-

request to ask for an attorney. Because due process protections are at the center of the public's understanding about its rights, we exercise our discretion and analyze the due process issue.

¶ 44. The due process clause of the Wisconsin Constitution, article I, section 8(1).[22] Due process protections, however, do not extend to defendants who refuse to submit to chemical tests under implied consent statutes: the right of refusal, if granted by the legislature, is a statutory privilege, not a constitutional right. *South Dakota v. Neville*, 459 U.S. 553, 565 (1983); *Crandall*, 133 Wis. 2d at 254–55. Unlike similar laws in other states, the Wisconsin implied consent statute, Wis. Stat. § 343.305, creates no such statutory privilege. *Id.* at 257. By applying for drivers' licenses, Wisconsin residents impliedly consent to chemical testing. *Zielke*, 137 Wis. 2d at 47–48. An accused driver waives other rights and "has no choice in respect to granting his consent." *Neitzel*, 95 Wis. 2d at 201.

¶ 45. The absence of a constitutional right to refuse a test makes it unnecessary for officers to issue *Miranda* warnings prior to the administration of breathalyzer tests.[23] *Bunders*, 68 Wis. 2d at 134. In

times based on erroneous assumptions. *See* Schack, *Criminal Procedure—Motorist Confusion* at 950.

[22] Article I, section 8(1) of the Wisconsin Constitution reads:

Prosecutions; double jeopardy; self-incrimination; bail; habeas corpus. SECTION 8. (1) No person may be held to answer for a criminal offense without due process of law, and no person for the same offense may be put twice in jeopardy of punishment, nor may be compelled in any criminal case to be a witness against himself or herself.

[23] We note, however, that if an officer wishes to conduct a custodial interrogation of a drunk driver, the officer has a duty to issue *Miranda* warnings.

Wisconsin, there is no right under the implied consent statute to consult with an attorney before deciding whether to submit to a chemical test. *Neitzel*, 95 Wis. at 206.[24] Because the driver already has consented to the test, it is unnecessary to secure the advice of an attorney about the decision to submit. *Id.* at 193–94.

¶ 46. To prove a due process violation, Reitter must show that the State deprived him of a constitutionally protected interest. *See Casteel v. McCaughtry*, 176 Wis. 2d 571, 579, 500 N.W.2d 277 (1993).

¶ 47. Consistent with the rule of *Neville*, this court previously reconciled the due process clause with the implied consent statute in similar contexts. In *Crandall*, we held that admission of evidence of a defendant's refusal to take a breathalyzer test did not violate due process because the officer's reading of the "Informing the Accused" Form advised the defendant that she had consented to chemical testing when she received her operating license. *Crandall*, 133 Wis. 2d at 259. We later found that because the "Informing the Accused" Form adequately alerts accused drivers to the testing process and the consequences of refusal, the provisions of the implied consent statute do not violate due process. *Bryant*, 188 Wis. 2d at 692.

¶ 48. Although Reitter asserts a constitutional right that he does not have, he contends that Deputy Sipher "actively misled" him into believing that the right to counsel existed. Reitter suggests he suffered a due process violation because Deputy Sipher did not

---

[24] In 1985, the United States Supreme Court dismissed for lack of a federal question a Minnesota case in which the defendant argued a constitutional right to counsel existed in the period when deciding whether to take a chemical test. *See Nyflot v. Minnesota Comm'r of Pub. Safety*, 474 U.S. 1027 (1985).

inform him expressly that the right does not attach to the implied consent setting. Reitter maintains that when the deputy responded to his repeated requests for an attorney by reading the "Informing the Accused" Form, the deputy confirmed Reitter's mistaken impression of a right to counsel. Reitter implies that the deputy failed to inform him that his continued insistence on calling his attorney would be construed as a refusal. Reitter consequently concludes he was deprived of due process because he did not understand that his actions would result in the revocation of his driving privileges.

¶ 49. Reitter cites *Raley v. Ohio*, 360 U.S. 423 (1959), for the proposition that Deputy Sipher "actively misled" him into believing that the right to counsel existed. In *Raley*, the State of Ohio had assured the defendants that they could invoke the privilege against self-incrimination when they testified before Ohio Un-American Activities Commission. *Id.* at 425–34. State officials, however, neglected to inform the defendants about an Ohio immunity statute that expressly deprived them of that privilege. *Id.* After the defendants relied on the assurances about the privilege at the hearing and refused to answer questions, Ohio prosecuted them for criminal contempt. *Id.* In pursuing the convictions, the state relied upon the immunity statute, suggesting the defendants were presumed to know about the statute. *Id.* at 425. The Supreme Court held that due process rights had been violated because the express assurances were "actively misleading," causing the defendants to believe they had a right where none existed. *Id.* at 438.

¶ 50. In this case, Reitter was not led to believe he had a right where none existed. Deputy Sipher neither expressly assured nor implicitly suggested that

Reitter had a right to counsel. Unlike *Raley*, the State did not encourage Reitter to exercise a particular right, and the State did not neglect to inform Reitter about the statute. On the contrary, Deputy Sipher's readings of the "Informing the Accused" Form warned Reitter that state law deemed him to have consented to chemical testing under the implied consent statute. In response to Reitter's request for his lawyer, Deputy Sipher replied that the request "could result in a refusal." Reitter additionally was warned that if he failed to submit to the breathalyzer test, his driving privileges would be revoked.

¶ 51. This is not a case where the State chose to convict "a citizen for exercising a privilege which the State clearly told him was available to him." *Id.* at 438. Deputy Sipher neither tricked nor bullied Reitter into believing that refusal was a constitutional " 'safe harbor' free of adverse consequences." *Crandall* 133 Wis. 2d at 255–56 (citing *Neville*, 312 U.S. at 566). Rather, Deputy Sipher made Reitter aware that his failure to submit to the breathalyzer test would have adverse consequences. Consequently, Reitter fails to show that the State "actively misled" him to the belief that he had the right to counsel prior to the administration of the breathalyzer test.

¶ 52. An accused driver's erroneous belief about the right to counsel, and the erroneous belief that an officer deprives him or her of that presumed right, should not trigger a constitutional duty for the arresting officer.

## CONCLUSION

¶ 53. In conclusion, we hold that officers are under no affirmative duty to advise defendants that

the right to counsel does not apply in the informed consent statute. Although we advise arresting officers to follow the common sense rules of good practice and respond to accused drivers in a polite and direct manner, we conclude that any changes to the statute should be made by the legislature. We further hold that because the implied consent statute operates independently from the general statute reflecting the Sixth Amendment right to counsel, no tension between the two statutes caused a violation of Reitter's due process rights.

*By the Court.*—The order of the circuit court is affirmed.