LUNDSTEN, P.J.[1]
¶ 1 Richard Rey Myers appeals a circuit court order concluding that Myers improperly refused to submit to a blood test under the implied consent law. Myers argues that his refusal cannot be held improper because his refusal was based on misinformation supplied by an officer regarding Myers' right to counsel. I reject this argument and affirm.
Background
¶ 2 Myers was the subject of an investigation for an intoxicated driving offense. During the course of this investigation, Myers refused an officer's request that Myers submit to a chemical test of his blood under the implied consent law. As a result, Myers received a notice of intent to revoke his operating license.
¶ 3 Myers requested a hearing on his refusal. He argued that his refusal was not improper because the refusal was based on misinformation supplied by the officer regarding Myers' right to counsel. As discussed further below, Myers relied on a statement the officer made about Myers' right to counsel immediately after Myers had repeatedly stated during an earlier portion of the investigation that he would get an attorney. The circuit court rejected Myers' argument that, based on the officer's statement, his refusal was proper.
Discussion
¶ 4 Myers renews his same argument on appeal. More specifically, Myers argues that the officer's statement about the right to counsel misled him into thinking that he had the right to consult counsel prior to deciding whether to submit to a blood test. Myers argues that he would have submitted to the test but for having been misled by the officer. Therefore, Myers argues, his refusal was not improper. For the reasons that follow, I reject Myers' argument.
¶ 5 The circuit court's decision that a refusal is improper is a question of law for de novo review. State v. Ludwigson , 212 Wis. 2d 871, 875, 569 N.W.2d 762 (Ct. App. 1997). However, "[t]o the extent the circuit court's decision involves findings of evidentiary or historical facts, those findings will not be overturned unless they are clearly erroneous." State v. Baratka , 2002 WI App 288, ¶ 7, 258 Wis. 2d 342, 654 N.W.2d 875. Further, the "credibility to be given to testimony is uniquely within the province of the trial court." Noble v. Noble , 2005 WI App 227, ¶ 16, 287 Wis. 2d 699, 706 N.W.2d 166.
¶ 6 Here, as we shall see, Myers' argument fails because it runs contrary to the circuit court's factual and credibility findings.
¶ 7 Myers' argument is based on a test set forth in State v. Verkler , 2003 WI App 37, 260 Wis. 2d 391, 659 N.W.2d 137, and State v. Reitter , 227 Wis. 2d 213, 595 N.W.2d 646 (1999). In Verkler , we explained that
there now exists a narrow exception to the rule announced by the supreme court in State v. Neitzel , 95 Wis. 2d 191, 204, 289 N.W.2d 828 (1980). The Neitzel rule is that wanting to first consult with counsel before deciding whether to submit to a breath test is not a valid reason to refuse and an officer is on solid grounds in marking a refusal if the custodial defendant relies on this explanation for not immediately agreeing to take the breath test. See id. at 205. The narrow exception is the Reitter rule: If the officer explicitly assures or implicitly suggests that a custodial defendant has a right to consult counsel, that officer may not thereafter pull the rug out from under the defendant if he or she thereafter reasonably relies on this assurance or suggestion. See Reitter , 227 Wis. 2d at 240-42.
Verkler , 260 Wis. 2d 391, ¶ 8.
¶ 8 Reitter states this "narrow exception" as a three-pronged test, placing the burden on the defendant to show that: (1) the officer either failed to meet or exceeded his or her duty to inform the accused driver; (2) the lack or oversupply of information misled the accused driver; and (3) the officer's failure to inform the driver affected the driver's ability to make a choice about submitting to the chemical test. Reitter , 227 Wis. 2d at 233.[2]
¶ 9 Applying that test here, I conclude that, regardless whether the first prong is met, Myers' argument fails on the second and third prongs because that argument is contrary to the circuit court's explicit and implicit fact finding. I explain my reasoning below.
¶ 10 In arguing that he was misled as to whether he had the right to consult counsel before submitting to a blood test under the implied consent law, Myers relies on an earlier conversation he had with the officer when the officer requested that Myers perform field sobriety tests. During this conversation,
• Myers asked if he could refuse to take the field sobriety tests.
• The officer told Myers that he could refuse.
• Myers stated that he would refuse and "get a lawyer."
• The officer told Myers that he was under arrest.
• Myers stated: "That's fine. I'll get a lawyer."
• The officer stated, "Yup, and you absolutely have the right to do that."
The conversation in full went as follows:[3]
[Officer]: ... I am going to run you through some tests okay? I'm going to have you step back over here. All the way over to that little line right there. Just stand on the line for me. That's good right there.
Richard Myers: Why am I doing this?
[Officer]: I'm doing this because we believe that you were the driver of the vehicle tonight.
Richard Myers: So I can refuse this at any time. Get a lawyer?
[Officer]: You can refuse the test but then I put you down as a refusal to do the test.
Richard Myers: That's fine, I'll do that. I'll get a lawyer.
[Officer]: Okay. Alright, well then you're under arrest for operating while intoxicated. Okay?
Richard Myers: That's fine. I'll get a lawyer.
[Officer]: Yup, and you absolutely have the right to do that. I'm not trying to be a jerk about it. I just wanted to give you every opportunity to try to pass the tests ... in case you weren't ....
Richard Myers: I don't want that opportunity, I just want ... my equal right. Someone says that I'm something else and that doesn't mean that I have to do this test. That's it.
[Officer]: No, by all means, we are not going to force you to do the test. Again, I want to make sure that on camera I have said you have the right to do this test and I want to give you the opportunity to show that you weren't impaired when you were driving tonight.
Richard Myers: That's fine.
[Officer]: And you are refusing to do them? Okay.
Richard Myers: Yeah. I'll get a lawyer.
[Officer]: Okay. You're under arrest for operating while intoxicated. I am going to cuff you in front.
(Emphasis added.)
¶ 11 About 20 minutes after this conversation, with Myers in the officer's vehicle, the officer read Myers the "Informing the Accused" form under the implied consent law and made the request that Myers submit to a chemical test of his blood. Myers stated: "No. Not without my lawyer." The officer thus marked Myers as a refusal.
¶ 12 At the refusal hearing, Myers testified that, based on his earlier conversation with the officer, and based on "also thinking that that's ... my right," he thought he had the right to consult an attorney before submitting to a blood test. Myers further testified that, had he known that he did not have the right to consult an attorney before deciding whether to submit to a blood test, he would have agreed to the test.
¶ 13 Turning to the circuit court's decision, the circuit court set forth the applicable three-part test and, although the court did not make express credibility findings, several of the circuit court's factual findings can only reasonably be read as a finding that Myers' testimony about relying on misleading statements by the officer was not credible. The pertinent findings included that:
• Myers, throughout the investigation, stated that he wanted a lawyer.
• When it came to the time that the officer requested a chemical test of Myers' blood, the officer provided no information other than reading the Informing the Accused form.
• Myers did not, at the time of that request, indicate any misunderstanding about the chemical testing stage of the investigation.
¶ 14 What I glean from these findings is that the circuit court implicitly found that Myers was not misled by the officer as to Myers' right to counsel, and that Myers would have refused to take a blood test regardless of the officer's earlier statement regarding the right to counsel. The court effectively found that Myers was not credible on these points and that, before the officer made the statement about the right to counsel, Myers had already decided to refuse to cooperate with testing of any kind.
¶ 15 Myers' argument to the contrary seemingly assumes that the circuit court credited all of Myers' testimony, but I see no reason to make the same assumption. Had the court credited all of Myers' testimony, then logically the court would have either ruled for Myers or would have gone on to explain why Myers' reliance was not reasonable. The court did neither.
¶ 16 Additionally, I note that there was persuasive evidence to support the findings that Myers was not misled by the officer and did not rely on the officer's statement regarding the right to counsel.
¶ 17 First, as noted above, Myers hedged in his testimony as to whether he refused the blood test because of the officer's statement about his right to an attorney or because of his own "thinking that that's ... my right." Specifically, Myers testified as follows:
Q Did you say no [to the chemical test]?
A No.
Q What did you say?
A I said not without my attorney.
Q Did you think at that point you had the right to an attorney also?
A Yes.
Q Is the reason that you said that was because you thought you would get a chance to speak with an attorney?
A Yes.
Q Is that based on what [the officer] said to you?
A I thought, yes. It is also -
Q Based on the fact that-strike that. Go ahead.
A -also thinking that that's what I-was my right.
(Emphasis added.) Based on this testimony and all of the other circumstances, one reasonable inference was that, before the officer made the statement about the right to counsel, Myers already believed that he had the right to consult counsel before submitting to testing of any kind.
¶ 18 Second, prior to the time the officer made the statement to Myers about his right to an attorney, Myers refused to perform the field sobriety tests and twice said that he would get a lawyer. To repeat, the following exchange occurred before the officer's statement that Myers had the right to an attorney:
[Officer]: I'm doing this [the field sobriety tests] because we believe that you were the driver of the vehicle tonight.
Richard Myers: So I can refuse this at any time. Get a lawyer?
[Officer]: You can refuse the test but then I put you down as a refusal to do the test.
Richard Myers: That's fine, I'll do that. I'll get a lawyer.
[Officer]: Okay. Alright, well then you're under arrest for operating while intoxicated. Okay?
Richard Myers: That's fine. I'll get a lawyer.
(Emphasis added.) Based on this exchange and all of the other circumstances, one reasonable inference was that, before the officer made the pertinent statement, Myers had already decided not to cooperate further without an attorney.
¶ 19 Myers focuses on the circuit court's factual findings (1) that Myers told the officer he would not submit to a blood test without his attorney, and (2) that the officer did not, at the time of that request, tell Myers that he did not have the right to an attorney. Myers seemingly argues that these findings necessarily imply a further finding that Myers was misled by the officer's statement. For the reasons already explained, I disagree. It makes no sense to read the circuit court's decision as agreeing with Myers that Myers was misled by the officer when the circuit court ruled against Myers. For that to be true, the circuit court would have needed to misunderstand the law, and I have no reason to think that that is true.
¶ 20 I turn finally to Myers' reliance on Baratka , 258 Wis. 2d 342. Myers argues, as I understand it, that Baratka requires an officer to dispel a suspect's mistaken belief that there is a right to consult counsel before submitting to chemical testing under the implied consent law. In Baratka , the court stated:
Repeated requests for an attorney can amount to a refusal as long as the officer informs the driver that there is no right to an attorney at that point . State v. Reitter , 227 Wis. 2d 213, 595 N.W.2d 646 (1999). The officer did so inform Baratka. We therefore conclude that the evidence supports the trial court's finding that Baratka refused chemical testing, and its order revoking Baratka's operating privileges.
Id. , ¶ 15 (emphasis added).
¶ 21 Based on reasoning similar to that in the unpublished decision of State v. Furlong , No. 2016AP445-FT, unpublished slip op. ¶¶ 7-13 (WI App May 26, 2016), I reject Myers' Baratka argument. In short, reading Baratka as Myers seemingly does conflicts with Reitter , a supreme court decision, because Reitter encourages but does not require an officer to dispel a suspect's mistaken belief that the suspect has a right to counsel for chemical testing under the implied consent law. See Reitter , 227 Wis. 2d at 230-31 ; see also id. at 233-35 ; and, to the extent Baratka , a court of appeals decision, can be read in a way that conflicts with Reitter , I am bound to follow Reitter . See Furlong , No. 2016AP445-FT, unpublished slip op. ¶¶ 8-13.
¶ 22 To be clear, neither Baratka nor Reitter involved a claim that the officer was the source of a suspect's mistaken belief, something that Myers asserts is present here. I have already explained, however, that this assertion runs contrary to the circuit court's factual and credibility findings. Thus, under Reitter , the officer was not required to dispel Myers' mistaken belief about his right to counsel.
Conclusion
¶ 23 For the reasons stated, I affirm the circuit court's order concluding that Myers improperly refused to submit to a blood test under the implied consent law.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(c). All references to the Wisconsin Statutes are to the 2015-16 version.

As noted above, State v. Verkler , 2003 WI App 37, 260 Wis. 2d 391, 659 N.W.2d 137, tells us that the suspect's alleged reliance on any officer-supplied misinformation must be reasonable . See id. , ¶ 8. Here, for reasons explained in the text, I conclude that the circuit court found that Myers did not rely on any officer-provided information regarding the right to counsel. Thus, I need not address whether reliance on that information would have been reasonable.

This conversation was videotaped, with audio, and the circuit court viewed pertinent portions of the video at the refusal hearing. The hearing transcript does not include a transcription of the conversation, but the parties agreed to a transcription that the State provided in circuit court briefing. I quote from this agreed-upon transcription.