In the MATTER OF the Refusal of Darren A. KLISS:

STATE of Wisconsin, Plaintiff-Respondent,

v.

Darren A. KLISS, Defendant-Appellant.

Court of Appeals

*No. 2006AP113. Submitted on briefs September 21, 2006. —Decided December 6, 2006.*

2007 WI App 13

(Also reported in 728 N.W.2d 9.)

276

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael C. Witt* of *Monogue & Witt, S.C.*, Jefferson.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Wallace K. McDonell* of *Harrison, Williams, McDonell & Swatek, LLP*, Whitewater and *Michael C. Sanders*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. SNYDER, P.J.   Darren A. Kliss appeals from an order holding that he unlawfully refused to submit to an evidentiary chemical test, contrary to Wis. Stat. § 343.305(9) (2003–04).[1] Kliss contends that the circuit court applied an improper legal standard when it determined that an oversupply of information did not interfere with his ability to make a choice under the implied consent law. Specifically, he argues that the court used a subjective standard, rather than an objective standard, to hold that he unlawfully refused the chemical test. In the alternative, Kliss argues that even under a subjective test, his refusal was lawful. We disagree and affirm the order of the circuit court.

## BACKGROUND

¶ 2.   On Friday, February 4, 2005, at approximately 11:48 p.m., City of Whitewater Police Officer Lakentric Thomas was dispatched to the scene of a traffic incident reported by fellow officer, Matteson. Matteson stated that he was at an intersection when a pickup truck crossed the centerline while turning, and came within inches of striking Matteson's vehicle. When Thomas arrived, Matteson was talking to an adult male,

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise stated.

later identified as Kliss. Thomas approached and noted that Kliss had a strong odor of intoxicants on him. Kliss stated that he was from Illinois and was not familiar with Whitewater and that he had just come from a bar. Kliss consented to field sobriety tests, which he failed.

¶ 3.  Thomas advised Kliss that he was going to arrest him for operating a motor vehicle while intoxicated (OWI). Kliss consented to a preliminary breath test, which produced a .164 blood alcohol content result. Thomas searched Kliss and his vehicle incident to arrest. While searching the vehicle, Thomas observed a plastic baggie that contained a "plant-like" substance and smelled of marijuana. Kliss denied owning the baggie and stated that he had given other people rides in his truck that night. Thomas also found what appeared to be a marijuana cigarette and marijuana flakes inside the vehicle.

¶ 4.  Thomas took Kliss to the police department and read him his *Miranda*[2] rights. Thomas then asked Kliss, "[D]o you wish to answer questions now?" Kliss replied, "No." Approximately twenty minutes later, Thomas issued Kliss a citation for OWI, first offense. He then read Kliss the Informing the Accused form. Kliss asked Thomas how this would affect his Illinois drivers license. Thomas responded that he did not know how it would affect his Illinois license. Thomas then asked

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966). Thomas read the following to Kliss:

> Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can and will be used against you in court. You have the right to talk to a lawyer before questioning and to have the lawyer with you during questioning. If you cannot afford a lawyer and want one, a lawyer will be appointed for you without charge prior to any questioning. If you decide to start answering questions at this time, you can stop any time during the questioning.

Kliss if he would submit to an evidentiary chemical test of his breath. Kliss responded, "No." Thomas recorded this as a refusal and issued Kliss a Notice of Intent to Revoke. Thomas issued two municipal citations, one for OWI and one for possession of marijuana.

¶ 5. Kliss filed a request for a refusal hearing and the municipal court dismissed the refusal revocation. The City of Whitewater appealed the decision to the circuit court and a hearing was held on January 10, 2006. Following testimony from Thomas and arguments by the parties, the circuit court held that Kliss unlawfully refused to submit to the evidentiary chemical test of his breath. Kliss appeals.

## DISCUSSION

■

¶ 6. Kliss presents one issue on appeal: Is the application of the *Reitter*[3] rule to be based upon the objective standard applied in prior implied consent case law, or the subjective understanding of the accused? Kliss asserts that the circuit court improperly applied a subjective test in evaluating whether Kliss was misled to believe he had the right to counsel before submitting to an evidentiary chemical test under WIS. STAT. § 343.305, the implied consent law. He further contends that, even if his subjective understanding of the implied consent warning is an appropriate consideration, his refusal was nonetheless lawful.[4] The application of the

---

[3] *State v. Reitter*, 227 Wis. 2d 213, 595 N.W.2d 646 (1999).

[4] We observe that Kliss, in his appellate brief, is inconsistent in his use of pinpoint citations for the case law he invokes to support his legal contentions. WISCONSIN STAT. RULE 809.19(1)(e) requires the appellant to support its contentions with citations conforming to the Uniform System of Citation

implied consent law to an undisputed set of facts presents us with a question of law, which we review de novo. *State v. Rydeski*, 214 Wis. 2d 101, 106, 571 N.W.2d 417 (Ct. App. 1997).

¶ 7. We begin by tracing the relevant case law. In 1980, our supreme court held that the desire to consult with an attorney before deciding whether to submit to an evidentiary chemical test under the implied consent law is not a valid reason to refuse the test. *State v. Neitzel*, 95 Wis. 2d 191, 205, 289 N.W.2d 828 (1980). Because the implied consent law makes no provision for the right to counsel, an officer is correct to record a refusal if the arrestee insists on speaking to an attorney before answering. *Id.* at 200, 205.

¶ 8. Fifteen years later, we observed that the implied consent warnings are analogous to those employed in *Miranda*-type cases. *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 276, 542 N.W.2d 196 (Ct. App. 1995). We stated:

> The *Miranda* warnings themselves are not confusing such that understanding the warnings affects a person's unconstrained will to confess to a crime. The police, however, may create confusion for the accused by misstating the warnings or using other coercive and manipulative means to procure information. There are similar problems that may occur when police deliver the implied consent warnings.

and Supreme Court Rule 80.02. A citation to a specific legal principle from case law shall include a reference to the page number, or paragraph number if a public domain citation is available, where the legal principle may be found. SCR 80.02(3). The rules of appellate practice are designed in part to facilitate the work of the court and such intermittent compliance with the rules improperly burdens the appellate court.

*Id.* at 276–77 (citations omitted). We identified a three-part test to assess the adequacy of a warning provided under the implied consent law. *Id.* at 280. The test asks: (1) whether the officer had met or exceeded his or her duty to provide the statutory information to the accused driver, (2) whether the lack or oversupply of information was misleading, and (3) whether the failure to properly inform the driver affected the driver's ability to make a choice about the evidentiary chemical test. *Id.* In *Quelle*, we expressly rejected a subjective confusion defense, holding that "the legislature has adequately addressed any risk of confusion by imposing a statutory duty on the police to provide accused drivers with specific information." *Id.* at 281. We rejected Quelle's argument that "an officer has a duty to 'explain' and not merely read the information form, thereby reducing the chance that an accused driver would be 'subjectively confused' by the warnings." *Id.* at 280.

¶ 9. Shortly thereafter, the supreme court again addressed the right to counsel in the context of the implied consent law. In *State v. Reitter*, 227 Wis. 2d 213, 595 N.W.2d 646 (1999), the issue before the court was "whether the implied consent statute imposes an affirmative duty upon a police officer to inform a defendant that there is no right to counsel in the implied consent setting, and whether a defendant's request to consult with an attorney constitutes a statutory refusal to submit to a chemical test." *Id.* at 223. The *Reitter* court held that no affirmative duty to advise defendants existed. *Id.* at 242–43. It distinguished Reitter's situation from that presented in *Raley v. Ohio*, 360 U.S. 423 (1959), where the defendants were actively misled to believe they had a right where none existed. *Reitter*, 227 Wis. 2d at 241 (citing *Raley*, 360 U.S. at 438). Unlike the

situation in *Raley*, our supreme court explained, Reitter's arresting officer "neither expressly assured nor implicitly suggested that Reitter had a right to counsel." *Reitter*, 227 Wis. 2d at 241–42. The court noted that Reitter did not assert that he was provided the *Miranda* warnings or that he was in fact confused. *Id.* at 229–30.

¶ 10. More recently, this court revisited the issue in *State v. Verkler*, 2003 WI App 37, 260 Wis. 2d 391, 659 N.W.2d 137. There we expressly relied on the *Reitter* holding to conclude that "[i]f the officer explicitly assures or implicitly suggests that a custodial defendant has a right to consult counsel, that officer may not thereafter pull the rug out from under the defendant if he or she thereafter reasonably relies on this assurance or suggestion." *Verkler*, 260 Wis. 2d 391, ¶ 8. In *Verkler*, the arresting officer allowed Verkler to consult with his law partner at the scene of the traffic stop. *Id.*, ¶ 9. We concluded however, that there was no assurance or suggestion by the officer that Verkler had a right to consult legal counsel about whether to submit to the evidentiary chemical test. *Id.*, ¶ 10.

¶ 11. Now the issue presents itself with a new, though clearly anticipated, factual element: the *Miranda* warning. In *Reitter*, the supreme court hypothesized that if Reitter had claimed that his or her insistence for a lawyer "fell under the shadow of a *Miranda* warning, he might have made an argument for obligating the [officer] to clarify any resulting right to counsel confusion. Instead, Reitter offers little that would tempt us toward embarking down the tangled *O'Connell* path." *Reitter*, 227 Wis. 2d at 230.[5] In *Verkler*, we acknowledged

_____

[5] The quoted language references *Commonwealth v. O'Connell*, 555 A.2d 873, 878 (Pa. 1989), where the Pennsylva-

that *Miranda* "is now a household word in the United States," and anticipated that the situation might arise where a reasonable person would think the right to counsel attached in the implied consent context. *See Verkler*, 260 Wis. 2d at 391, ¶ 4 (referring to our certification of the *Reitter* case to the Wisconsin supreme court).

¶ 12. With this history in mind, we turn to Kliss's contentions of error. Referencing *Verkler*, Kliss argues that "the reading of the *Miranda* warnings prior to the administration of the Informing the Accused is misleading, and does objectively impact the accused's ability to make the choice about chemical testing." Though Kliss would have us conclude that this scenario will always create a duty on the part of the officer to clarify that *Miranda* does not apply to the request for a chemical test under WIS. STAT. § 343.305, we do not read *Verkler* to create such a bright line rule.

■

¶ 13. Where an officer reads the *Miranda* warning prior to reading the Informing the Accused, the *Reitter* test must still be applied. First, we must ask whether Kliss was told he has the right to consult with counsel before deciding to submit to chemical testing. *See Verkler*, 260 Wis. 2d 391, ¶ 6. If he was, we must decide whether Kliss relied on the assurance or suggestion when responding to the request for a chemical test. *See id.*, ¶ 8.

¶ 14. There is no dispute that Thomas read Kliss the *Miranda* warning prior to reading the Informing the Accused. Thus the argument can be made that

nia supreme court held that arresting officers have a duty to warn arrestees that *Miranda* rights do not apply in the implied consent setting. *See Reitter*, 227 Wis. 2d at 227.

Thomas explicitly assured Kliss he had the right to remain silent and to obtain counsel prior to responding to the request for an evidentiary chemical test. This proposition would be more persuasive had there not been a drug charge accompanying the OWI charge. The discovery of marijuana provides the explanation for the *Miranda* reading here. If OWI had been the only concern, Kliss would have a stronger argument that the *Miranda* warning pertained to Thomas's request for the chemical test.

██

¶ 15.   For purposes of our analysis here, we will assume without deciding that the first part of the *Reitter* test has been met. Accordingly, we turn our attention to the second element, that of reliance. The State directs us to relevant portions of circuit court's analysis:

> [COURT]:   The question is, did [Kliss] get advised of *Miranda*? He clearly did, before the informing the accused was read, he clearly did. Did he then invoke his rights under *Miranda*?
>
> And here's what *Miranda* says. It says, "You have the right to remain silent." Let's stop a second. Did he exercise that right? He had been told he had that right.
>
> He was then read the informing the accused. Wasn't asked for anything until it was all read, and then it said, the question was, "Will you agree to a test of your breath, blood?"
>
> Did the defendant firm his lips up and answer with absolute silence? No. Did he say, "I invoke my right to silence," which would be the equivalent? Did he say, "I decline to answer," which would be the same? No. He said "no."
>
> . . . .
> .

285

It then says, "Anything . . . you say can and will be used against you in a court of law." He's told that. What does he say? He says "no."

. . . .

Third warning, "You have the right to talk to a lawyer and have him present with you while you are being questioned."

Did [Kliss], after getting that particular right, say to the officer after the informing the accused, instead of "No, I want my lawyer and I want to consult with my lawyer first?" It would have been an interesting problem, because he'd been told he could. No, he did not do that.

. . . .

Finally, fifth, "You can decide at any time to exercise these rights and not answer any questions or make any statements." I don't have to answer. He could shut up. Or he could say something that clearly invoked his right . . . . That's not what he did. He said "no." That meant that with full knowledge that had been given to him under *Miranda* rights, I have no reason to believe it wasn't a totally voluntary statement: No, I refuse to take the test.

. . . .

I find that he did refuse. I find in no way that he exercised his right to remain silent.

The State asserts that the circuit court properly determined that Kliss unlawfully refused to take the test.

■

¶ 16. Kliss contends that the circuit court improperly applied a subjective confusion analysis, which has been expressly rejected in Wisconsin. He directs us to

286

the language in *Quelle*, 198 Wis. 2d at 280, where we stated that "subjective confusion" is not a recognized defense. In *Quelle*, we expressly rejected any assessment of "the *driver's perception* of the information delivered to him or her." *See id.* We agree with Kliss that subjective confusion is not recognized in Wisconsin; however, subjective confusion is not the standard that the circuit court applied here. Rather, it engaged in an objective assessment as to whether Kliss's statements or conduct could be perceived as reliance on his right to remain silent or to obtain legal counsel *with regard to the evidentiary chemical test.* The record supports the circuit court's conclusion that there was no such reliance. While Thomas read the Informing the Accused form, Kliss asked him how his Illinois driving privileges would be affected. Such a question would have been more appropriately addressed to legal counsel had Kliss believed he had a right to an attorney at that point. Also, as the circuit court noted, Kliss gave an unequivocal "no" when asked to submit to the test.

■■■■

¶ 17.  The reading of *Miranda* does not, in and of itself, lead us to conclude that the officer explicitly assured or implicitly suggested that a defendant has a right to consult counsel or to stand silent in the face of the implied consent warnings. Furthermore, we will not presume reliance on the *Miranda* warnings. Rather, we apply the two-part *Reitter* test to the facts on a case-by-case basis. The court must determine whether, under the facts of the case, the *Miranda* warning mislead the defendant to believe the right to remain silent and to have an attorney apply in the implied consent context. If so, the court must then determine whether the defendant invoked the *Miranda* rights when faced with

the decision whether to submit to an evidentiary chemical test. Only where both factors are present will a refusal be deemed lawful.

## CONCLUSION

¶ 18.    Kliss must demonstrate both elements of the *Reitter* test, and his failure to show that he relied on the *Miranda* warning before he refused to submit to the evidentiary chemical test resolves the appeal. Where there is no reliance, the officer is under no duty to advise the defendant that the right to counsel does not attach to the implied consent statute. *See Reitter*, 227 Wis. 2d at 231. Accordingly, we affirm the order of the circuit court.

*By the Court.*—Order affirmed.