STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael R. RYDESKI, Defendant-Appellant.†

Court of Appeals

*No. 97–0169–CR. Submitted on briefs July 9, 1997.—Decided October 2, 1997.*

(Also reported in 571 N.W.2d 417.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Alan G. Habermehl* of *Thomas, Kelly, Habermehl & Wood, S.C.* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael P. Finley*, assistant district attorney.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

DYKMAN, P.J.[1]    Michael R. Rydeski appeals from an order revoking his driving privileges for refusing to submit to a chemical breath test as required by

---

[1] Upon Rydeski's motion, the chief judge of the court of appeals ordered that this case would be decided by a three-judge panel.

the implied consent statute, § 343.305, STATS. This case presents two issues: (1) whether Rydeski in fact refused to submit to the test; and (2) whether his subsequent willingness to submit to the test cured his initial refusal. We conclude that, by his conduct, Rydeski refused to submit to the requested Intoxilyzer test. We also conclude that Rydeski did not have a right to cure his refusal. Accordingly, we affirm.

## BACKGROUND

At the refusal hearing, State Trooper Jeffrey Zuzunaga testified that he arrested Rydeski for OMVWI shortly after 2:23 a.m. on August 7, 1996. Zuzunaga transported Rydeski to the State Patrol Headquarters in Madison.

Upon arrival at the State Patrol Headquarters, Zuzunaga asked Rydeski to submit to an Intoxilyzer test. Rydeski initially agreed to submit to the test. Approximately twelve minutes later, Rydeski requested to use the restroom. Because a twenty-minute observation period is required prior to administering an Intoxilyzer test,[2] Zuzunaga informed Rydeski that he could either use the restroom immediately, under the officer's direct supervision, or wait to use the bathroom until the Intoxilyzer testing was completed. Rydeski agreed to wait.

---

[2] WISCONSIN ADM. CODE § TRANS 311.06 provides in relevant part:

(3) Procedures for quantitative breath alcohol analysis shall include the following controls in conjunction with the testing of each subject:

(a) Observation by a law enforcement person or combination of law enforcement persons, of the test subject for a minimum of 20 minutes prior to the collection of a breath specimen, during which time the test subject did not ingest alcohol, regurgitate, vomit or smoke.

At the close of the twenty-minute period, Zuzunaga asked Rydeski to perform the test. Again Rydeski asked to use the restroom, to which Zuzunaga repeated his initial reply that Rydeski could either wait to use the restroom or use it under supervision. Rydeski became agitated and stated that he wanted to use the restroom immediately and without supervision. Zuzunaga asked "at least five times" that Rydeski submit to the test, but Rydeski continued to refuse. Zuzunaga marked "refusal" on the Intoxilyzer test form.

Zuzunaga then followed Rydeski into the restroom, where he lost visual contact with Rydeski. Upon reentering the Intoxilyzer room, Zuzunaga began to fill out a Notice of Intent to Revoke Operating Privileges form for Rydeski's refusal to submit to an Intoxilyzer test. At that time, Rydeski stated that he had not refused and that he would submit to the test. Zuzunaga did not administer the test and instead transported Rydeski to the Public Safety Building.

Rydeski also testified at the refusal hearing. He testified that Zuzunaga never requested that he perform the Intoxilyzer test. He also denied ever refusing to take the test.

The trial court found that Zuzunaga requested Rydeski to take the Intoxilyzer test on at least five occasions and that Rydeski refused to approach the machine. The court found that Rydeski did not explicitly state that he would not take the test, but that his actions constituted the refusal. The court found that Rydeski requested to take the test after his initial refusal, but that there was no obligation on the officer to allow him to do so. Based on these findings, the trial court revoked Rydeski's driving privileges for two years. Rydeski appeals.

## DISCUSSION

■

Rydeski argues that he never refused to submit to the Intoxilyzer test. The application of the implied consent statute to found facts is a question of law that we review *de novo. See Olen v. Phelps*, 200 Wis. 2d 155, 160, 546 N.W.2d 176, 180 (Ct. App. 1996). We conclude that, by his conduct, Rydeski refused to submit to the Intoxilyzer test.

■

Section 343.305(1), STATS., provides that anyone who drives a motor vehicle is deemed to have consented to a properly administered test to determine the driver's blood alcohol content. *Village of Elkhart Lake v. Borzyskowski*, 123 Wis. 2d 185, 191, 366 N.W.2d 506, 509 (Ct. App. 1985). Any failure to submit to such a test, other than because of physical inability, is an improper refusal. *See id.*

■

Rydeski claims that he never verbally refused to submit to the Intoxilyzer test. However, a verbal refusal is not required. The conduct of the accused may serve as the basis for a refusal. *Id.*

In *Borzyskowski*, the defendant agreed to take a breathalyzer test. *Id.* at 188, 366 N.W.2d at 508. However, when asked to perform the test, the defendant repeatedly failed to cooperate with the procedures of the test, thereby preventing the officer from obtaining an accurate breath sample. *Id.* at 190–91, 366 N.W.2d at 509. We concluded that even though the defendant never verbally refused to take the test, his "uncooperative conduct" constituted a refusal. *Id.* at 191, 366 N.W.2d at 509.

Similarly, Rydeski initially agreed to take the test and never verbally refused the test. However, his subsequent conduct constitutes a refusal to take the test. At the close of the twenty-minute observation period, Zuzunaga asked Rydeski to perform the test, but Rydeski refused and instead insisted that he be allowed to use the restroom alone. Zuzunaga repeated this request "at least five times," but Rydeski continued to refuse. Zuzunaga then marked the test as a refusal. Rydeski's conduct prevented Zuzunaga from administering the test, and therefore, we conclude that Rydeski refused to submit to the test.

Rydeski argues that even if this conduct constituted a refusal, the refusal was cured when he later asked Zuzunaga to administer the test. Rydeski contends that the implied consent statute should be interpreted as allowing for a timely consent rather than giving a conclusive effect to an initial refusal. He suggests that the determination of whether a driver refused the test should rest on the totality of the circumstances, taking into account such factors as whether the accused agreed to submit within a reasonable time and whether administration of the test would inconvenience the officer or result in a loss of the test's evidentiary value due to the delay.[3]

Rydeski cites authority from other jurisdictions that allow for such a "reasonable recantation" period.[4]

---

[3] Section 885.235(1), STATS., allows for the automatic admissibility of the test results so long as the test was administered within three hours after the arrest.

[4] *See, e.g., Pruitt v. Alaska*, 825 P.2d 887 (Alaska 1992); *Noland v. Arizona*, 728 P.2d 685 (Ariz. Ct. App. 1986); *Zahtila v. Motor Vehicle Div.*, 560 P.2d 847 (Colo. Ct. App. 1977); *Larmer v. Florida*, 522 So. 2d 941 (Fla. Dist. Ct. App. 1988); *Department*

The State counters with its own authority which shows that the majority of states have rejected such a recantation period in favor of adopting a bright-line rule of refusal.[5] We conclude that in Wisconsin this issue is controlled by *State v. Neitzel*, 95 Wis. 2d 191, 289 N.W.2d 828 (1980).

In *Neitzel*, the defendant stated that he would not submit to a blood test until he had the opportunity to consult with his attorney. This failure to submit was determined to be a refusal under the implied consent statute. The supreme court explained its determination:

> Once there has been a proper explanation and there has been a refusal, even though that refusal is conditioned on the accused's willingness to reconsider after conferring with counsel, a refusal has occurred under the statute and the accused is subject to the consequence of a mandatory suspension. There is no obligation upon the law enforcement authorities to renew the offer to take the test, even though the time within which the test may be admissible . . . has not yet expired. The obligation of the accused is to take the test promptly or to refuse it promptly. If

---

*of Pub. Safety v. Seay*, 424 S.E.2d 301 (Ga. Ct. App. 1992); *Hawaii v. Moore*, 614 P.2d 931 (Haw. 1980); *Smith v. Idaho*, 770 P.2d 817 (Idaho Ct. App. 1989); *Standish v. Department of Rev.*, 683 P.2d 1276 (Kan. 1984); *Pickard v. Louisiana*, 572 So. 2d 1098 (La. Ct. App. 1990); *Lund v. Hjelle*, 224 N.W.2d 552 (N.D. 1974); *New Mexico v. Suazo*, 877 P.2d 1088 (N.M. 1994); *Baldwin v. Oklahoma ex rel. Dep't of Pub. Safety*, 849 P.2d 400 (Okla. 1993).

[5] *See New Mexico v. Suazo*, 877 P.2d 1088, 1093–94 (N.M. 1994). The case attests that the majority of states have adopted a bright-line rule of refusal.

he refuses, the consequences flow from the implied consent statute.

*Id.* at 205, 289 N.W.2d at 835. In addition, § 343.305(9)(a), STATS., provides that when a person refuses to submit to a test, "the law enforcement officer shall *immediately* take possession of the person's license and prepare a notice of intent to revoke . . . the person's operating privilege." (Emphasis added.)

Based on *Neitzel* and the language of the implied consent statute, we conclude that once a person has been properly informed of the implied consent statute, that person must promptly submit or refuse to submit to the requested test, and that upon a refusal, the officer may "immediately" gain possession of the accused's license and fill out the Notice of Intent to Revoke form. A person's refusal is thus conclusive and is not dependent upon such factors as whether the accused recants within a "reasonable time," whether the recantation comes within the three-hour time period provided in § 885.235(1), STATS., or whether administering the test at a later time would inconvenience the officer or result in a loss of the test's evidentiary value. Therefore, Rydeski's willingness to submit to the test, subsequent to his earlier refusal, does not cure the refusal. Because Rydeski refused to submit to a test to determine his blood alcohol content, we affirm the trial court's order revoking his driving privileges.

*By the Court.*—Order affirmed.