KESSLER, P.J.
¶1 Gerald J. Vanderhoef appeals the judgment of conviction, following a no contest plea, of one count of operating while intoxicated (OWI), as a sixth offense. He also appeals from the order denying his postconviction motion for relief. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
BACKGROUND
¶2 On July 26, 2013, Vanderhoef was charged with one count of operating while intoxicated as a fifth or sixth offense. According to the criminal complaint, on July 24, 2013, at 2:10 a.m., Oak Creek police responded to a report of a vehicle in a field at the intersection of South Chicago Road and East Ryan Road. When police arrived, Officer Ashley Schnering observed Vanderhoef standing in the middle of road. When Schnering tried to approach Vanderhoef he repeatedly said "just shoot me." Vanderhoef did not follow Schnering's orders and was ultimately tased. When Vanderhoef was taken into custody, Schnering searched his vehicle and found a glass pipe with a "Chore boy" shoved in the end of it, which Schnering recognized as a crack pipe. The complaint further states that a citizen witness observed Vanderhoef's truck traveling at a high rate of speed, driving through a stop sign, and ultimately driving off the road into a field. The complaint states that the combination of Vanderhoef's behavior, the recovery of the crack pipe, and the witness's observations led Schnering to believe that Vanderhoef was intoxicated.
¶3 Following his arrest, Vanderhoef was transported to Wheaton Franciscan Hospital where the hospital administered a urine test[1] and where, pursuant to a warrant, Vanderhoef's blood was drawn. The State subpoenaed the results of the blood test and the hospital provided the results of the urine test. Both the urine and blood tests showed metabolites of cocaine. Vanderhoef filed a motion to suppress the results of the blood test, arguing that "he was subjected to an illegal search and seizure of a sample of his blood, conducted pursuant to" an invalid warrant. He later moved to exclude the results of the urine test, arguing that the test results were medically privileged.[2]
¶4 At the suppression motion hearing, Schnering testified about the events leading up to Vanderhoef's arrest and the blood draw. Schnering testified consistent with the criminal complaint regarding the events leading up to Vanderhoef's arrest. She also testified that following Vanderhoef's arrest, he was transported to the hospital. She testified that Vanderhoef did not speak to the officer at the hospital, nor did he respond to Schnering when she read him the "Informing the Accused" form. Schnering testified that she read the form multiple times and asked Vanderhoef if he consented to a blood draw, but he did not answer. Schnering marked Vanderhoef's refusal to respond as a refusal on the form and then obtained a warrant. Vanderhoef's blood was subsequently drawn.
¶5 As to the blood test, the State conceded that due to errors in the search warrant affidavit, the search warrant was invalid. However, the State argued that the blood draw was authorized by the implied consent law, see WIS. STAT. § 343.305(2) (2017-18),[3] and that under the circumstances Vanderhoef was incapable of withdrawing consent. As to the urine test, the State argued that no doctor-patient privilege or statutory exception applied to support exclusion of the urine test results.
¶6 The circuit court ultimately denied Vanderhoef's motions, determining that at the time of the blood draw, Vanderhoef was incapable of withdrawing consent and that the blood draw was therefore authorized under the implied consent law. The circuit court also found that the results of the urine test were admissible at trial.
¶7 Vanderhoef subsequently pled no contest to OWI as a fifth or sixth offense. The sentencing court sentenced Vanderhoef to two and one-half years of initial confinement and three years of extended supervision.
¶8 Vanderhoef filed a postconviction motion seeking additional sentencing credit, challenging the trial court's denial of his motion to suppress evidence, and seeking to withdraw his no contest plea on the grounds of ineffective assistance of counsel. The postconviction court granted the motion as it pertained to sentencing credit, but denied the remainder of the motion. This appeal follows.
DISCUSSION
¶9 On appeal, Vanderhoef argues that the circuit court erred in denying his motion to suppress the results of the blood draw because: (1) his silence when asked for a blood sample constituted a refusal to consent; and (2) the record did not support the circuit court's finding that he was delirious and incapable of withdrawing consent. He also argues that the circuit court erred in ruling that the results of his urine test were admissible. We agree that the circuit court erred in denying Vanderhoef's motion to suppress the results of the blood test. We disagree, however, that the circuit court erred in finding the results of the urine test admissible.
I. Blood Draw
¶10 Our review of an order denying a motion to suppress presents a question of constitutional fact, which is subject to a two-step standard of review. See State v. Tullberg , 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120. First, we uphold the circuit court's findings of historical fact unless they are clearly erroneous. See State v. Williams , 2002 WI 94, ¶17, 255 Wis. 2d 1, 646 N.W.2d 834. Then, we review the circuit court's determination of the constitutional question de novo. See id.
¶11 "The Fourth Amendment to the United States Constitution, and its Wisconsin counterpart, Article I, Section 11 of the Wisconsin Constitution, protect persons' rights to 'be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' " State v. Mitchell , 2018 WI 84, ¶17, 383 Wis. 2d 192, 914 N.W.2d 151, cert. granted, No. 18-6210, 2019 WL 166881 (U.S. Jan. 11, 2019) (footnote and citation omitted). "As the text makes clear, the ultimate touchstone of the Fourth Amendment is reasonableness." Id. (citations omitted). As a result, the Fourth Amendment does not prohibit all searches undertaken by government actors, but "merely proscribes those which are unreasonable." Id. (citations omitted). "Drawing blood is a search of the person." Id. , ¶18.
¶12 "However, there are certain 'specifically established and well-delineated' exceptions to the Fourth Amendment's warrant requirement. One such exception is a search conducted pursuant to consent." Id. , ¶19 (citations and one set of quotation marks omitted). "In determining whether consent was given, we employ a two-step process." Id. , ¶20. "First, we examine whether relevant words, gestures or conduct supports a finding of consent. Second, we examine whether the consent was voluntarily given." Id. (internal citation omitted).
¶13 Here, Vanderhoef argues that the circuit court erred in determining that his silence constituted consent under the implied consent law and that he was incapable of withdrawing consent because of his medical state. Relying on the Wisconsin Supreme Court's decision in State v. Reitter , 227 Wis. 2d 213, 595 N.W.2d 646 (1999), and this court's decision in State v. Rydeski , 214 Wis. 2d 101, 106, 571 N.W.2d 417 (Ct. App. 1997), Vanderhoef argues that his "silence in response to an officer's request for chemical testing when [he] [was] able both physically and intellectually able to respond is not consent." (Capitalization and bolding omitted.) We agree.
¶14 In Reitter , Racine police arrested the defendant for operating while intoxicated and transported him to the sheriff's patrol station for administration of an intoxilyzer test. Id. , 227 Wis. 2d at 218. A sheriff's deputy read the defendant the "Informing the Accused" form. Id . at 219-20. The defendant responded by repeatedly asking to speak with his attorney. Id. at 220. The deputy, in turn, repeatedly told the defendant about the informed consent law and the consequences of refusing to take the intoxilyzer test. Id. at 220. The defendant continued to request to speak with his attorney and grew uncooperative. Id. at 221. The supreme court concluded that the defendant's behavior constituted a refusal to submit to the testing, stating "[t]he implied consent law does not require a verbal refusal. Rather, the conduct of the defendant may constitute an unlawful refusal." Id. at 234 (internal citation omitted).
¶15 Similarly in Rydeski , the defendant initially agreed to take a breath test, but we concluded that his subsequent conduct constituted a refusal. See id. , 214 Wis. 2d at 107. In that case, the defendant insisted on using the bathroom prior to the test despite the officer having asked him to take the test "at least five times." See id. We concluded that because the defendant did not comply with the officer's instructions, the defendant's behavior was a refusal. See id. at 109.
¶16 Applying the principles of Reitter and Rydeski to the facts of this case, we conclude that Vanderhoef's conduct constituted a refusal to submit to chemical testing. While at the hospital, Schnering attempted to speak with Vanderhoef multiple times, but Vanderhoef remained silent. Schnering read the "Informing the Accused" form from beginning to end and specifically asked Vanderhoef several times whether he would consent to a blood draw. Vanderhoef remained silent. Schnering filled out the necessary paperwork, marking that Vanderhoef was refusing testing. Schnering then secured a warrant for the blood draw; however, the warrant was later found to be invalid.
¶17 We also conclude that the record does not support the circuit court's finding that Vanderhoef was in a state of delirium and therefore unable to withdraw his consent. Vanderhoef's medical charts indicate that he was coherent and responsive to medical personnel. Vanderhoef's emergency room records state that he was "fully verbal," and that he "verbalized understanding" to instructions given by medical personnel. The records further state that Vanderhoef refused to speak, but would shake his head "yes" or "no," was "alert," and had a "normal" neurologic condition. Vanderhoef was later transported to the Milwaukee Behavioral Health Department where he was further evaluated. Reports from that evaluation state that Vanderhoef showed no signs of delirium and was neurologically functional.
¶18 The State does not refute Vanderhoef's argument that silence constitutes a refusal, but argues that the cases upon which Vanderhoef relies are distinguishable because Vanderhoef was not capable of refusing. As reviewed above, the State's argument is not supported by the record.
¶19 The record supports Vanderhoef's contention that his silence constituted a knowing refusal to consent to the blood draw, thus necessitating a search warrant. See Mitchell , 383 Wis. 2d 192, ¶¶17-18. The circuit court erred in finding that Vanderhoef's silence constituted consent and that Vanderhoef was incapable of withdrawing consent. Because the State conceded that the warrant used to obtain Vanderhoef's blood was invalid, the circuit court erred in denying Vanderhoef's motion to suppress the results of the blood draw.
II. Urine Test Results
¶20 Vanderhoef next contends that the circuit court erred in finding his medical records, specifically the results of his urine test, admissible at trial. Vanderhoef argues that the circuit court erred in ruling that the records were admissible at trial because the records were medically privileged and he did not consent to their release. We conclude that Vanderhoef waived his right to medical privilege when he pled no contest.
¶21 A plea of no contest ordinarily waives all nonjurisdictional defects and defenses, including violation of constitutional rights, that occur before entry of the plea. County of Racine v. Smith , 122 Wis. 2d 431, 434, 362 N.W.2d 439 (Ct. App. 1984). "[T]he effect of a guilty plea is to cause the defendant 'to forego the right to appeal a particular issue.' " State v. Kelty , 2006 WI 101, ¶18 n.11, 294 Wis. 2d 62, 716 N.W.2d 886 (citation omitted). Because Vanderhoef pled no contest, he waived his claim that the circuit court erred in finding the results of the urine test admissible. However, even if we were to accept Vanderhoef's assertion that his medical privilege argument is preserved for consideration before this court, we still conclude that the circuit court properly found the test results admissible.
¶22 Vanderhoef's medical records are not privileged. Vanderhoef contends that his test results are privileged under WIS. STAT. § 146.81(4), which defines patient health care records.[4] Vanderhoef contends that the urine test was obtained for diagnostic purposes and is thus not subject to the statutory exception in WIS. STAT. § 905.04(4)(f), which states: "[t]here is no privilege concerning the results of or circumstances surrounding any chemical tests for intoxication or alcohol concentration, as defined in s. 340.01(1v)."
¶23 "The construction of a statute and its application to a set of facts is considered a question of law." City of Muskego v. Godec , 167 Wis. 2d 536, 545, 482 N.W.2d 79 (1992). "If the meaning of the statute is plain, we are prohibited from looking beyond the language of the statute to ascertain its meaning."Id. (citation omitted).
¶24 Like our supreme court in Godec , we note that WIS. STAT. § 146.81(4)"is a general statute when compared to the more specific [ WIS. STAT. §] 905.04(4)(f), which concerns tests for intoxication." See id. 167 Wis. 2d at 546.[5] "When we compare a general statute and a specific statute, the specific statute takes precedence." Id. The circuit court's ruling limited the use of Vanderhoef's records to a determination of intoxication based on a urine test that tested for intoxicants. That the hospital may have tested for other substances or conditions as well is not relevant under the statute. The statutory language is plain: there is no privilege considering the results or circumstances surrounding chemical tests that test for intoxication, including the test given to Vanderhoef.
¶25 Accordingly, we affirm the circuit court's ruling on the admissibility of the urine test results, reverse the circuit court's denial of Vanderhoef's motion to suppress the results of the blood draw, and remand with directions for the circuit court to enter an order suppressing the results of Vanderhoef's blood draw.[6]
By the Court. -Judgment and order affirmed in part, reversed in part, and cause remanded for further proceedings.
Not recommended for publication in the official reports.

Because Vanderhoef was tased, the hospital administered a urine test as a part of its diagnostic medical testing.

Vanderhoef's motion to exclude the results of the urine test was labeled as a motion to suppress evidence. A motion to suppress evidence "generally bars admission of evidence at trial as a result of governmental misconduct, such as a constitutional violation." See State v. Eichman , 155 Wis. 2d 552, 562, 456 N.W.2d 143 (1990). A motion to exclude evidence "generally involves only a violation of the rules of evidence." Id. at 563. Because Vanderhoef's challenge to the admission of the results of the urine test rests on an argument of medical privilege, we conclude that his motion was a motion to exclude the test results.

Under the implied consent law, any person who drives on Wisconsin highways is deemed to have consented to submit to a chemical test when requested by a law enforcement officer. See Wis. Stat. § 343.305(2). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Wisconsin Stat. § 146.81(4) defines "[p]atient health care records" as:
all records related to the health of a patient prepared by or under the supervision of a health care provider; and all records made by an ambulance service provider, as defined in s. 256.01(3), an emergency medical services practitioner, as defined in s. 256.01(5), or an emergency medical responder, as defined in s. 256.01(4p), in administering emergency care procedures to and handling and transporting sick, disabled, or injured individuals. "Patient health care records" includes billing statements and invoices for treatment or services provided by a health care provider and includes health summary forms prepared under s. 302.388(2). "Patient health care records" does not include those records subject to s. 51.30, reports collected under s. 69.186, records of tests administered under s. 252.15(5g) or (5j), 343.305, 938.296(4) or (5) or 968.38(4) or (5), records related to sales of pseudoephedrine products, as defined in s. 961.01(20c), that are maintained by pharmacies under s. 961.235, fetal monitor tracings, as defined under s. 146.817(1), or a pupil's physical health records maintained by a school under s. 118.125.

Contrary to Vanderhoef's implication, "intoxicant" is not limited to alcohol. See Wis. Stat. § 939.22(42) (defining "[u]nder the influence of an intoxicant" as meaning "that the actor's ability to operate a vehicle ... is materially impaired because of his or her consumption of an alcohol beverage, hazardous inhalant, of a controlled substance or controlled substance analog under ch. 961, of any combination of an alcohol beverage, hazardous inhalant, controlled substance and controlled substance analog, or of any other drug, or of an alcohol beverage and any other drug").

To the extent Vanderhoef raised arguments not addressed in this opinion, we conclude that this opinion is dispositive.