COURT OF APPEALS
DECISION
DATED AND FILED

November 22, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP452**

STATE OF WISCONSIN

Cir. Ct. No. **2017TR768**

IN COURT OF APPEALS
DISTRICT III

---

IN THE MATTER OF THE REFUSAL OF ROMAN C. OZIMEK:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROMAN C. OZIMEK,

DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Brown County: KENDALL M. KELLEY, Judge. *Affirmed*.

¶1 HRUZ, J.[1] Roman Ozimek appeals an order revoking his privilege to operate a motor vehicle for one year based upon his refusal to submit to an

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

evidentiary blood draw. Ozimek argues that the circuit court erroneously ignored certain evidence when determining whether the arresting law enforcement officer complied with WIS. STAT. § 343.305(4). In particular, he contends the court should have considered evidence that the officer misinformed Ozimek of his "constitutional right" to obtain his own chemical testing without having to first consent to the officer's request for chemical testing. Ozimek argues that it does not matter that this alleged misinformation was provided after the officer had correctly read the information required in § 343.305(4), and Ozimek had refused the requested test.

¶2      We reject Ozimek's arguments, in large part, because he fails to respond to—and therefore concedes—the State's arguments. Even if Ozimek had filed a reply brief, we conclude that Ozimek has not established that law enforcement failed to comply with WIS. STAT. § 343.305(4). In addition, to the extent Ozimek is raising a constitutional claim, we conclude that he is not entitled to his request for "dismissal of the refusal charge." Accordingly, we affirm.

## BACKGROUND

¶3      For purposes of this appeal, the following facts are undisputed. In the early morning hours of January 8, 2017, Officer Tyler Dawson of the De Pere Police Department observed a vehicle traveling in the wrong direction on a one-way street. Dawson activated his car's emergency lights, conducted a traffic stop, and identified Ozimek as the driver of the vehicle. Ozimek admitted that he was coming from a bar, and Dawson observed that Ozimek had slurred speech and glossy, bloodshot eyes and that a strong "odor of intoxicants" was emanating from Ozimek's vehicle.

¶4      After Officer Dawson stopped Ozimek, Officer Nicholas Walvort of the Green Bay Police Department responded to the traffic stop to provide assistance.  Walvort asked Ozimek if he would be willing to perform standardized field sobriety tests.  Although Ozimek initially agreed to Walvort's request, Ozimek later said he did not want to perform the tests.  Ozimek was subsequently arrested for operating a motor vehicle while intoxicated (OWI) and transported to a hospital for a blood draw.

¶5      At the hospital, Officer Walvort read an Informing the Accused form verbatim to Ozimek.  That form contained the information and warnings set forth in WIS. STAT. § 343.305(4).  Walvort then asked if Ozimek would consent to a blood draw for chemical testing, to which Ozimek responded, "[N]o."  Almost immediately after saying no, Ozimek asked whether there would be further testing, and Walvort responded that Ozimek "would have to consent to the initial test to be allowed those other tests."  Ozimek then asked "what he should do," and Walvort responded that he could not provide any legal advice.  Ozimek did not change his mind and refused the blood draw.  Walvort subsequently gave Ozimek a form providing notice of intent to revoke Ozimek's operating privilege.  *See* § 343.305(9)(a).  Walvort also obtained a warrant to procure the blood draw, which apparently showed that Ozimek's blood alcohol concentration (BAC) was over the legal limit.

¶6      Ozimek filed a timely request for a refusal hearing on the revocation. Thereafter, the circuit court held a hearing, at which both Officer Dawson and Officer Walvort testified.  During the cross-examination of Walvort, the State objected to testimony that Ozimek was told he could not obtain his own testing without first consenting to the requested chemical tests.  The State argued that this statement would be irrelevant because it occurred after Ozimek had refused to

consent to the blood draw. The court held the objection in abeyance to allow the parties to brief the issue.

¶7 Following briefing, the circuit court sustained the State's objection. Relying on *State v. Rydeski*, 214 Wis. 2d 101, 571 N.W.2d 417 (Ct. App. 1997), the court recognized that

> once a person has been properly informed of the implied consent statute, that person must promptly submit or refuse to submit to the requested test, and … upon a refusal, the officer may "immediately" gain possession of the accused's license and fill out the Notice of Intent to Revoke form.

*See id.* at 109. The court further noted *Rydeski*'s holding that a person's refusal is "conclusive" and "not dependent upon such factors as whether the accused recants within a 'reasonable time.'" *See id.* Ultimately, the court concluded that because Officer Walvort accurately read the Informing the Accused form and Ozimek refused to submit to a blood draw, any subsequent discussion between Walvort and Ozimek was irrelevant.

¶8 The circuit court later issued a written order finding that Ozimek unreasonably refused to submit to chemical testing. The court subsequently revoked Ozimek's privilege to operate a motor vehicle for one year. *See* WIS. STAT. § 343.305(10)(b)2.

¶9 Ozimek now appeals. Additional facts will be provided as necessary below.

**DISCUSSION**

¶10 Under Wisconsin's implied consent law, any person who operates a motor vehicle upon the public highways in Wisconsin is deemed to have given

consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity of alcohol or controlled substances, when lawfully requested by a law enforcement officer. WIS. STAT. § 343.305(2). Upon the arrest of a person for OWI under WIS. STAT. § 346.63(1), an officer may ask the driver to provide one or more samples of breath, blood or urine for chemical testing. Sec. 343.305(3)(a). At the time an officer requests a sample, the officer must read the information and warnings set forth in § 343.305(4), which are generally incorporated into a form entitled "Informing the Accused." *See State v. Schmidt*, 2004 WI App 235, ¶10, 277 Wis. 2d 561, 691 N.W.2d 379.

¶11 If the driver refuses to take the test, the officer "shall immediately prepare a notice of intent to revoke … the person's operating privilege." WIS. STAT. § 343.305(9)(a). The driver may then ask a court to review the revocation at a refusal hearing. *See* § 343.305(9)(a)4. The issues at a refusal hearing are limited to: (1) whether the officer had probable cause to believe the person was operating a motor vehicle under the influence of alcohol; (2) whether the person was lawfully arrested for violation of an OWI-related statute; (3) whether the officer complied with § 343.305(4) by providing the necessary information; and (4) whether the person refused to test for any reason other than because of a physical inability to test due to physical disability or disease that is unrelated to intoxication. Sec. 343.305(9)(a)5.; *see also State v. Anagnos*, 2012 WI 64, ¶27, 341 Wis. 2d 576, 815 N.W.2d 675. If a court resolves one or more of these issues in favor of the driver, "the court shall order that no action be taken on the operating privilege on account of the person's refusal to take the test in question." Sec. 343.305(9)(d).

¶12 In this appeal, Ozimek frames his arguments around the third issue—i.e., whether Officer Walvort complied with WIS. STAT. § 343.305(4). *See*

§ 343.305(9)(a)5.b. In doing so, Ozimek appears to advance two intertwined but seemingly separate arguments. He first argues that it would have been relevant to the circuit court's inquiry under § 343.305(9)(a)5.b. to determine whether he received "misinformation" about his right to collect his own chemical testing after he had refused the chemical testing requested by Walvort. Relatedly, Ozimek also contends that this misinformation impacted his "fundamental constitutional right" to "gather evidence" because he had a right to obtain his own chemical testing regardless of whether he submitted to Walvort's request for a blood draw.

¶13    In response, the State largely ignores the issue of whether the alleged misinformation was relevant per se. Instead, the State appears to argue that even if the alleged misinformation was relevant, Ozimek still could not establish that Officer Walvort failed to comply with WIS. STAT. § 343.305(4). The State also contends that Ozimek did not have a constitutional right to collect his own chemical testing. Significantly, Ozimek did not file a reply brief responding to these arguments, nor did he anticipatorily address them in his brief-in-chief.

¶14    Similar to the State's approach, we will assume, without deciding, that the alleged misinformation was relevant to the circuit court's inquiry under WIS. STAT. § 343.305(9)(a)5.b.[2] We therefore must determine whether, based

---

[2] We note, however, that Ozimek's argument regarding the relevancy of the alleged misinformation is deficient in multiple respects. First, Ozimek's relevancy argument largely ignores the basis for the circuit court's decision. Ozimek neither cites *Rydeski*—which the circuit court determined was controlling—in his appellate brief nor does he distinguish *Rydeski*'s holding that a driver "must promptly submit to or refuse" the requested test "once [the driver] has been properly informed" under WIS. STAT. § 343.305(4). *See State v. Rydeski*, 214 Wis. 2d 101, 109, 571 N.W.2d 417 (Ct. App. 1997). Second, Ozimek does not attempt to show how Officer Walvort's statements after Ozimek had unequivocally refused the blood draw were probative of whether Walvort complied with § 343.305(4). *See* WIS. STAT. § 904.01. By failing to address the grounds for the court's decision, Ozimek concedes the validity of the court's ruling. *See West Capitol, Inc. v. Village of Sister Bay*, 2014 WI App 52, ¶49, 354 Wis. 2d 130, 848 N.W.2d 875. Accordingly, Ozimek's relevancy argument is unconvincing.

upon the undisputed facts, Officer Walvort complied with § 343.305(4). The interpretation of § 343.305 and its application to undisputed facts are questions of law that we review de novo. *See Washburn County v. Smith*, 2008 WI 23, ¶55, 308 Wis. 2d 65, 746 N.W.2d 243.

¶15 Where, as here, a law enforcement officer provided all of the statutorily required information but then allegedly provided more information than that provided in WIS. STAT. § 343.305(4), courts employ a three-part test to determine whether the officer complied with § 343.305(4). *See Smith*, 308 Wis. 2d 65, ¶72. Pursuant to that test, an officer has not complied with § 343.305(4) if: (1) the officer has exceeded his or her duty under § 343.305(4) to provide information to the accused; (2) the officer's oversupply of information was misleading or erroneous; and (3) the officer's failure to properly inform the driver affected the driver's ability to make the choice about chemical testing.[3] *See*

---

[3] Ozimek argues that if "there has been a misstatement of the law [that has affected a constitutional right], then the accused's operating privilege may not be revoked … regardless of whether the erroneous information has caused 'actual harm' to the accused." We construe this argument as addressing the third prong of this test, even though Ozimek never explicitly says as much. Ozimek, however, fails to identify any legal authority establishing or supporting the proposition that we do not consider the third prong when the misinformation involves a purported constitutional right. He also fails to address the State's argument that we must consider whether the alleged misinformation affected Ozimek's decision to submit to testing. Ozimek therefore concedes the State's argument. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded).

In any event, we agree with the State that we must address the third prong because it is undisputed that Officer Walvort provided the "statutorily required information" by reading the Informing the Accused form verbatim, but he also provided additional information explaining whether there would be further testing. *See Washburn County v. Smith*, 2008 WI 23, ¶72, 308 Wis. 2d 65, 746 N.W.2d 243 (holding that the three-prong test applies to cases "in which the law enforcement officer provided all the statutorily required information but then provided more information in excess of his [or her] duty under [WIS. STAT.] § 343.305(4).").

*State v. Ludwigson*, 212 Wis. 2d 871, 875, 569 N.W.2d 762 (Ct. App. 1997); *see also Smith*, 308 Wis. 2d 65, ¶56 & n.43, ¶72.

¶16    The State concedes that the first prong has been met because Officer Walvort provided extra information when Ozimek asked about further testing. The State argues, however, that Ozimek has not established the second or third prongs.  Specifically, the State contends that the extra information was "not necessarily erroneous [or] misleading" because, according to the text of WIS. STAT. § 343.305(4), "the option of taking further tests is predicated upon taking the requested tests."  The State also asserts that Ozimek cannot demonstrate that the extra information affected his decision to refuse chemical testing because he refused testing before Walvort provided the excess information.

¶17    Again, Ozimek never responds to these arguments.  He did not file a reply brief, and he therefore never addressed the three-prong test for determining whether an officer failed to comply with WIS. STAT. § 343.305(4) by providing extra information.  As a result, Ozimek has conceded the State's arguments. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession); *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded).  We accept Ozimek's concession that Officer Walvort complied with § 343.305(4).

¶18    Nevertheless, we observe that the State's arguments are correct.  As relevant here, WIS. STAT. § 343.305(4) requires that law enforcement inform the driver:

> *If* you take all the requested tests, *you may* choose to take further tests. You may take the alternative test that this law enforcement agency provides free of charge. You also may have a test conducted by a qualified person of your choice at your expense. You, however, will have to make your own arrangements for that test.

(Emphasis added.) Thus, the plain language of § 343.305(4) conditions a driver's right to take further tests—including the driver's own tests—on the driver first submitting to the requested tests. *See also **Schmidt***, 277 Wis. 2d 561, ¶11 ("[I]t is clear from [§ 343.305(4) and (5)] that the accused does not have a right to choose a test *instead of* the one the officer asks him or her to take; rather, the 'alternative test' is *in addition to* that test."). Therefore, by telling Ozimek that he could not obtain any other chemical testing unless he first consented to the blood draw, Officer Walvort did not provide any misleading or erroneous information under § 343.305(4). *See **Ludwigson***, 212 Wis. 2d at 875.

¶19     Likewise, Ozimek has not shown that the alleged misinformation affected his ability to make his choice about agreeing to the requested chemical testing. *See **id.*** To prevail on this third prong, the driver must produce "sufficient evidence to make a prima facie showing of a causal connection between the misleading statements and the refusal to submit to chemical testing." *See **Smith***, 308 Wis. 2d 65, ¶68. "Once the prima facie evidence has been submitted, the burden shifts to the State to prove otherwise." ***Id.*** Although this third prong is generally a question of fact, we may resolve this question as a matter of law if the driver has not made a prima facie showing of a causal connection. *See **id.***, ¶86; ***Ludwigson***, 212 Wis. 2d at 876-77 ("When a party fails to produce any credible evidence as to an element, the party fails to meet his or her burden of proof as a matter of law.").

¶20    Here, Ozimek did not produce any evidence showing that he would have taken the requested chemical testing had he been informed—as he contends he should have been—that he could obtain his own chemical testing without consenting to Officer Walvort's requested test.  Ozimek did not testify at the refusal hearing.  Nor did Walvort's testimony suggest that Ozimek refused because of the alleged misinformation.  It is also undisputed that Ozimek unequivocally refused the requested chemical testing before receiving the alleged misinformation, which strongly suggests that the alleged misinformation played no role in Ozimek's decision.  If anything, Walvort's alleged misinformation would have created a greater incentive for Ozimek to consent to the requested test because Ozimek would have needed to consent if he truly wanted to obtain his own chemical testing.  Nevertheless, Ozimek never consented to the requested chemical testing.  In short, the record contains no evidence suggesting a causal connection between the alleged misinformation and Ozimek's refusal.

¶21    We do recognize, however, that Ozimek's argument that he received misinformation is not solely premised on the text of WIS. STAT. § 343.305(4). Rather, his argument is primarily based on his belief that he had a constitutional right to gather evidence.  Ozimek asserts that this right is "well-settled" and "long-standing," yet he fails to identify a single case establishing that a defendant has an unfettered right to obtain evidence, especially in a context similar to the implied consent one at issue here.  In any event, even if we assumed that Ozimek had been misinformed about a constitutional right to obtain his own chemical testing and that this misinformation could be considered in a court's inquiry under § 343.305(9)(a)5.b., Ozimek still has not produced any evidence that this misinformation affected his ability to decide whether to submit to the requested

chemical testing. Therefore, he still could not establish the third prong of our test. *See **Ludwigson***, 212 Wis. 2d at 875.

¶22 Finally, Ozimek seems, at times, to step beyond his claim about being misinformed, and he appears to suggest that Officer Walvort actually interfered with and violated Ozimek's "constitutional right" to obtain his own chemical testing. In particular, Ozimek contends that "dismissal of the refusal charge is the only appropriate remedy in a case in which the government has interfered with the accused's right to access this additional evidence." Ozimek asserts that ***State v. McCrossen***, 129 Wis. 2d 277, 385 N.W.2d 161 (1986), supports this proposition.

¶23 Not only does ***McCrossen*** not support Ozimek's argument, it demonstrates that "dismissal of the refusal charge" would not be an appropriate remedy in this case. In ***McCrossen***, the defendant was arrested for OWI and was given a breathalyzer test, which indicated that her BAC was ".24 percent." ***Id.*** at 281. The defendant immediately asked for a second test, but it was never administered. ***Id.*** at 281-82. After the defendant was charged with OWI, the circuit court suppressed the initial breathalyzer test because the defendant's statutory right to a second test was violated, but the court also determined that there was no constitutional violation that would require dismissal of the OWI charge. ***Id.*** at 282-83. The defendant was later convicted at a jury trial. ***Id.*** at 284.

¶24 On appeal, our supreme court considered "whether the denial of a second test deprived the defendant of constitutionally material evidence, and thereby required dismissal of the charge." ***Id.*** at 288. To resolve that issue, the court considered several United States Supreme Court cases that set forth "the

11

relevant test for determining whether sanctions are required when a defendant is denied access to evidence." *Id.* at 290-94. The court recognized that, under those cases, the defendant must show that the unavailable evidence at issue was "material" in a constitutional sense. *Id.* at 291-94. The court further noted the Supreme Court's explanation that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 294 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). In the end, the court concluded that the defendant had not been denied "access to material evidence, in a constitutional sense," because the defendant had not made "a plausible showing that an alternative test would have been favorable." *Id.* at 296-97.

¶25 In this case, Ozimek has neither argued nor shown that the potential results from his own chemical testing would have been constitutionally material to the circuit court's determination under WIS. STAT. § 343.305(9)(d). In other words, he has not demonstrated a reasonable probability that if he had been able to obtain his own chemical testing, those test results would have changed the outcome of one of the limited issues considered at the refusal hearing. *See McCrossen*, 129 Wis. 2d at 294; *see also* § 343.305(9)(a)5. Notably, Ozimek's BAC would have little, if any, evidentiary value to the court's consideration of whether Officer Walvort had probable cause to believe Ozimek was operating while under the influence of alcohol, whether Walvort lawfully arrested Ozimek, whether Walvort complied with § 343.305(4), and whether Ozimek refused the requested tests.[4] *See* § 343.305(9)(a)5. Accordingly, to the extent Ozimek is

---

[4] In addition, we note that the record is not entirely clear whether Ozimek actually wanted to obtain his own chemical testing or whether Officer Walvort prevented Ozimek from doing so.

raising a separate constitutional challenge to the order on appeal, we conclude that Ozimek is not entitled to his request for "dismissal of the refusal charge."[5]

¶26 In sum, we conclude that Officer Walvort complied with WIS. STAT. § 343.305(4) and that Ozimek has not established a constitutional violation requiring dismissal.[6] Accordingly, the circuit court did not err by revoking Ozimek's privilege to operate a motor vehicle for one year.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] At times, Ozimek appears to rely on *State v. Walstad*, 119 Wis. 2d 483, 351 N.W.2d 469 (1984), to support his arguments that he has a constitutional right to obtain his own chemical testing and that "dismissal of the refusal charge" is the appropriate remedy for a violation of that right. We disagree that *Walstad* supports either of these propositions. "*Walstad* stands for the proposition that *a second test* is a due process safeguard only because it permits impeachment of a prior alcohol concentration test result." *State v. McCrossen*, 129 Wis. 2d 277, 288, 385 N.W.2d 161 (1986) (emphasis added). *Walstad* therefore does not support Ozimek's argument that he has a constitutional right to obtain his own chemical testing regardless of whether there was an initial test. Moreover, even though there was no due process violation in *Walstad*, "the sanction in that case if due process had been violated was only suppression of the state's breathalyzer test result." *McCrossen*, 129 Wis. 2d at 289. Accordingly, *Walstad* does not support Ozimek's argument that "dismissal of the refusal charge" is the appropriate remedy.

To the extent we do not directly address any of Ozimek's other cited case law, we note that none of those cases conflict with our analysis or conclusion.

[6] We may affirm on different grounds than those relied on by the circuit court. *State v. Earl*, 2009 WI App 99, ¶18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755.