**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 23, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP392**

Cir. Ct. No. **2022TR292**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

JEFFREY LEE BUSS,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Dodge County: JOSEPH G. SCIASCIA, Judge. *Affirmed*.

¶1     BLANCHARD, J.[1]   Jeffrey Buss appeals a judgment revoking his Wisconsin driver's license for refusing to submit to an evidentiary breath test after

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(g) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

he was arrested on suspicion of operating while intoxicated (OWI). Buss argues that he did not refuse to consent to the test because he remained silent in response to the arresting deputy's repeated requests for a "yes" or "no" answer, even though the deputy told him that his silence would count as a refusal. The circuit court concluded that Buss's remaining silent constituted a refusal to give his consent. I agree with this conclusion based on the undisputed facts and accordingly affirm.

## BACKGROUND

¶2      At around midnight, a sheriff's deputy pulled over Buss's truck after allegedly observing it swerve outside of its lane of travel.[2] In speaking with Buss, the deputy detected an odor of intoxicants coming from Buss, observed that Buss had bloodshot eyes, and noted that his speech was slurred. The deputy asked Buss to perform field sobriety tests. Buss briefly began to cooperate with the field sobriety testing but then declined to participate further, saying in part, "I told you I don't have to risk. You give me a blood test." Buss consented to a preliminary breath test, which reflected a blood alcohol percentage of .139.[3] The deputy formally placed Buss under arrest.

---

[2] The facts recited here are gleaned from undisputed allegations contained in the parties' briefs filed in the circuit court and from my review of the audiovisual recording captured by the deputy's body-worn device. In short, for purposes of this appeal, the parties agree on the relevant facts, including facts supporting the determinations that the traffic stop was valid and that the deputy had reasonable suspicion sufficient to investigate the possibility of impaired operation. A criminal case against Buss based on the same incident remains pending in the circuit court, and I do not express any view on any aspect of that litigation.

[3] *State v. Fischer*, 2008 WI App 152, ¶¶4-6, 13, 314 Wis. 2d 324, 761 N.W.2d 7, discusses differences between the preliminary breath test that Buss consented to perform and the form of chemical breath test, which is subject to strict protocols of reliability, that the deputy later asked Buss to consent to perform.

¶3      With both the deputy and Buss seated in the deputy's squad vehicle, the deputy read Buss the Informing the Accused form, the nature of which is discussed in more detail below.  After accurately reading from the form, the deputy asked Buss, "Will you submit to an evidentiary chemical test of your breath, yes or no?"  Buss gave no audible response for several seconds.  The deputy repeated, "Jeff, yes or no?"  Again, Buss did not respond.  After several more seconds, the deputy said, "Jeff, if you don't say yes or no, I'm going to mark you as a refusal, do you understand that?"  After a brief pause, the deputy said, "Okay, so you're not going to say yes or no?"  About 25 seconds passed.  The deputy said, "So is that a yes you'll take the test or no you're not going to answer?" According to both parties, at some point during this exchange Buss said, "I don't give a fuck what you do," although I have not been able to independently discern this from the video.  Also according to both parties, and as far as I can independently discern from the video, Buss gave no other response to the deputy's questions on the topic of an evidentiary chemical test.

¶4      The deputy obtained a search warrant to draw Buss's blood from a duty judge.  The blood was drawn at a nearby hospital without incident.  The State served Buss with a notice of intent to revoke his license for refusing a test, and Buss requested a hearing within ten days, consistent with WIS. STAT. § 343.305(10).  The sole issue at the refusal hearing was whether Buss had refused the test.  The circuit court concluded that he had.  Buss appeals.

## DISCUSSION

¶5      I begin with a brief summary of the law regarding refusals.  When a driver has been arrested on suspicion of operating while intoxicated, the arresting officer has the authority to request that the driver submit to a test of breath, blood,

or urine. WIS. STAT. § 343.305(3)(a). The statutes prescribe the language that the officer must read to the arrested person before making the request. § 343.305(4). The Wisconsin Department of Transportation has incorporated this language into a document known as the "Informing the Accused" form, which the deputy here accurately read to Buss. With one exception not relevant here, a validly arrested driver who refuses a test after having been read the Informing the Accused form is subject to license revocation. § 343.305(9)(am)5.c., (10). This revocation is automatic unless the driver requests a hearing within ten days of arrest, in which case the circuit court determines whether revocation is proper. § 343.305(9)(am)4. and (10)(a). By statute, the issues at such a revocation hearing are limited to whether the officer had reason to believe that the driver was operating with prohibited drugs or alcohol in the bloodstream, whether the officer accurately conveyed to the driver the "Informing the Accused" information, and "[w]hether the person refused to permit the test." § 343.305(9)(am)5.

¶6    Turning to Buss's argument on appeal, he does not contend that at the time the deputy made the request for a test there was not probable cause to arrest him for OWI, nor that the deputy failed to accurately read the Informing the Accused form to him. The sole issue is whether Buss "refused to permit the test," under WIS. STAT. § 343.305(9)(am)5., when he failed to respond to the deputy's repeated questions. There was no evidentiary hearing; on the agreement of the parties, the circuit court made its determination based solely on evidence in the record, including the audiovisual recording made by the deputy's body-worn device, which recorded much of the interaction between the deputy and Buss. To repeat, the parties do not disagree about the facts, but only about the legal significance of the facts. The application of the implied consent statute to

4

uncontested facts is an issue of law that I review de novo. *State v. Rydeski*, 214 Wis. 2d 101, 106, 571 N.W.2d 417 (Ct. App. 1997).

¶7      Buss specifically frames his argument as follows.  Silence by the accused person, in response to an officer's request for a "yes" or "no" answer after the officer has conveyed the statutorily required information, should not be regarded as a refusal to submit to a chemical test.  Instead, because the statutes provide that all who drive on Wisconsin highways are "deemed to have given consent" to such tests after a valid OWI arrest, *see* WIS. STAT. § 343.305(2), a person who does not respond to such a request ought to be viewed as having already provided consent, which remains operative unless the person explicitly withdraws it.  That is, Buss argues that the "deemed" consent for all drivers on the roadways, established by statute, continues unless and until a driver, when asked after arrest, expressly revokes this consent.  As part of this argument, Buss relies on the contract law principle that, once a party to a contract gives consent on a topic to the opposite party, generally that consent is operative until the first party explicitly revokes it.

¶8      I conclude that Buss's argument is foreclosed for two reasons.

¶9      First, Wisconsin appellate courts have consistently rejected arguments by drivers that the drivers did not refuse chemical tests even when the drivers did not explicitly decline a test by, for example, saying "no," or "I refuse." In none of the cases that I have examined, and in none cited by Buss, has a court suggested that common law contract principles apply to the statutory issue of whether a driver has refused a test when the request has been properly introduced and unambiguously put to the driver.  For example, a driver's repeated requests to use the bathroom or repeated requests to contact the driver's lawyer before

submitting to a requested test have been determined to constitute refusals. *Rydeski*, 214 Wis. 2d at 107; *State v. Reitter*, 227 Wis. 2d 213, 235, 595 N.W.2d 646 (1999). It is true that, unlike Buss, the drivers in *Rydeski* and *Reitter* each identified a specific activity as a precondition to giving consent for a test. But the fact remains that Buss, like those other drivers, failed to consent to a test, despite repeated, unambiguous inquiries from the deputy. In other words, under the applicable legal standards, the circuit court had an ample record to conclude that Buss manifested a negative response through his silence, just as the drivers in *Rydeski* and *Reitter* manifested negative responses by proposing preconditions, as opposed to more explicitly signaling consent or non-consent.

¶10 To recap the basics, the statute penalizing refusals is directed at a driver's answer to a question posed after the driver has been arrested on suspicion of OWI, and after that driver has been given the information contained in the Informing the Accused form. *See* WIS. STAT. § 343.305(4) (requiring reading of the information in the form); § 343.305(5) (describing procedures if the person then "submits"); § 343.305(9) (describing what happens if the person then "refuses"). Although the statute speaks in the abstract of "implied consent" to testing based on a person's driving on state highways, in practice the statute directs law enforcement officers to seek a person's explicit consent when the test

6

is requested, and imposes consequences—including license revocation—if the person fails to provide explicit consent.[4]

¶11    Second, our supreme court has stated that the "deemed consent" that the statute imputes to all drivers on Wisconsin's public roads is not equivalent to or a proxy for the "actual consent" that permits a warrantless search under the Fourth Amendment. In ***State v. Prado***, 2021 WI 64, 397 Wis. 2d 719, 960 N.W.2d 869, the court declared that a prior opinion, which had stated that WIS. STAT. § 343.305's "deemed" consent rendered a warrantless blood draw constitutional, "must be overruled" because "[s]uch a conclusion does not take into account the constitutionally significant difference between 'deemed' and actual consent." ***Prado***, 397 Wis. 2d 719, ¶53. The court also observed that "consent for purposes of a Fourth Amendment search must be 'unequivocal and specific.'" ***Id.***, ¶46 (citation omitted). In contrast, the "consent" that § 343.305 "deem[s]" a driver to have given "reduces a multifaceted constitutional inquiry to a single question in a manner inconsistent with this court's precedent regarding what is constitutionally required to establish consent." ***Prado***, 397 Wis. 2d 719, ¶45. Thus, after ***Prado***, Buss did not and could not consent to such a search simply by operating on the roadways.

---

[4] For this reason, I reject Buss's further argument that two additional facts undermine the conclusion that he refused to consent to a chemical test. The two facts Buss cites are that: early in the traffic stop, in the course of refusing further field sobriety testing, Buss said to the deputy, "I told you I don't have to risk. You give me a blood test."; and that Buss did not physically resist the eventual blood draw that was conducted pursuant to a warrant. As ***Rydeski*** notes, the statute demands consent or refusal at the time a law enforcement officer asks for consent to a chemical test. ***State v. Rydeski***, 214 Wis. 2d 101, 108, 571 N.W.2d 417 (Ct. App. 1997). Buss's earlier statement to the deputy, "give me a blood test," does not alter the fact that, when the question of whether he would consent was formally put to him—after he was informed that silence would amount to refusal—Buss manifested a negative response through silence. And, the fact that Buss did not ultimately resist the blood draw does not change the dispositive fact that, at the relevant time, he manifested a negative response to the requested breath test.

¶12    Buss points out that ***Prado*** concerned the special circumstance of a driver who is unconscious at the time the officer seeks to have her blood taken. Thus, ***Prado*** specifically concerned a provision, WIS. STAT. § 343.305(3)(b), that addresses "[a] person who is unconscious or otherwise not capable of withdrawing consent" and states that such a person "is presumed not to have withdrawn consent." ***Prado***, 397 Wis. 2d 719, ¶25.  It was this provision that ***Prado*** struck down as unconstitutional.  ***Id.***, ¶41.  But, as just explained, the principle on which ***Prado*** turned was that the implied consent statute's "deemed" consent, based solely on driving, is not the type of consent that dispenses with the general Fourth Amendment warrant requirement.  *See id.*, ¶¶44-46.  Unlike the statute at issue in ***Prado***, the statutes governing drivers who are physically and mentally capable of giving or withholding consent avoid this constitutional problem, because the statutory scheme expressly gives such drivers the choice to either consent to a test or to refuse consent.

¶13    Stepping back, the statutory scheme gives the conscious driver control over whether to grant or refuse to grant his or her consent to a test, but the driver's negative response to an officer's proper inquiry does not necessarily mean that no test will occur.  As happened here, police can seek a judicial warrant or, if some warrant exception other than voluntary consent applies, such as exigent circumstances, conduct a warrantless test.  *See, e.g.*, ***State v. Dieter***, 2020 WI App 49, ¶30, 393 Wis. 2d 796, 948 N.W.2d 431 (warrantless blood draw justified by exigent circumstances).

¶14    Summing up, on the facts of this case, the deputy's persistent, unambiguous questions of Buss after accurately reading from the Informing the Accused form—the requests for a "yes or no" as to whether he would consent to a chemical test of his breath—provided Buss with an opportunity to give, or to

8

withhold, constitutionally valid consent to a search. As the circuit court noted, the then-conscious Buss, who meaningfully interacted with the deputy at other times during their encounter, decided not to take the opportunity to expressly give or to expressly decline to give consent. Instead, as the court put it, on the consent issue Buss decided to "play[] games," in the sense that he decided to withhold an explicit answer to the unambiguous question repeatedly posed to him, and under all of the circumstances this silence was reasonably interpreted by the deputy as a refusal. For reasons I have explained, Buss cannot rely on the fact that he had driven on public roads to avoid responsibility for the decision he made when he was directly and clearly asked to consent to a breath test. Under our statutes and relevant case law, depending on the relevant facts, one way in which a driver can refuse a chemical test is to remain silent after being accurately read the Informing the Accused form and being unambiguously asked for a yes or a no answer on the consent issue.

## CONCLUSION

¶15  For all these reasons, the judgment revoking Buss's license based on a refusal is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

9